629 A.2d 977

**Marcia J. SNYDER, Appellee,**

**v.**

**Charles E. SNYDER, Appellant.**

Superior Court of Pennsylvania.

Argued April 29, 1993.

Filed Aug. 6, 1993.

James A. Cunningham, Blue Bell, for appellant.

Martin P. Mullaney, Lansdale, for appellee.

Before CAVANAUGH, WIEAND and HOFFMAN, JJ.

CAVANAUGH, Judge:

This appeal is from a Final Protection From Abuse Order which, *inter alia,* granted appellant's spouse sole and exclusive possession of the marital residence. The appellant raises three claims of error. We find the appellant's arguments unpersuasive and affirm.

The Petition For Protection From Abuse *sub judice* was filed *pro se* on October 19, 1992 in Montgomery County by appellee Marcia Snyder. The Petition the appellee filed is a standard form with various blanks to fill in or boxes to check in order to record pertinent information. Significant to this appeal she responded to the Petition's inquiries that on September 9, 1992, an incident of physical and verbal abuse occurred in the marital residence by appellant Charles Snyder. The appellee further alleged that the appellant:

> was physically overpowering & threatened sexual abuse. He inflicted me with bruises about my arms, legs & hips. He screamed at me & called me names throughout the night while the children were trying to sleep.

The appellee requested the following relief by checking off preprepared items listed as "relief": (1) the defendant refrain from abusing, harassing or threatening the Plaintiff, or any

Child or Relative of the plaintiff, in any place where they may be found; (2) the defendant be granted exclusive possession of the marital residence (located at 492 Hoffmansville Rd., Bechtelsville, PA); (3) the defendant be prohibited from having any direct contact with the plaintiff, plaintiff's relatives and/or children, either directly, or in writing or by telephone; (4) the Plaintiff be granted temporary legal and physical custody of the children; (5) the defendant be directed to turn his weapons over to the police or sheriff, until further order of the court; and (6) the defendant be directed to refrain from contacting friends and co-workers of the plaintiff.

A hearing was held before the Hon. Maurino J. Rossanese, Jr. on October 29, 1992. Pertinent to this appeal, the appellee was not limited by the court to describing the September 9th incident described in her petition. Rather, the court allowed the appellee over the appellant's objection to describe two prior recent incidents which she had with the appellant, the appellee having asked "to demonstrate that [the incidents] have been escalating and where we've come and where we're going."

In testifying about the progressively worse incidents of abuse, the appellee testified that the following three incidents occurred. Appellee claimed that on June 20, 1992, her husband had attempted to prevent her from going to a dinner for a co-worker who was leaving the company. The appellant called her names, followed her around and screamed in her face all day, and stole her car keys. On August 2, 1992, the appellee testified that when she came home from work, her husband was waiting for her behind the door. Her husband attempted to grab her purse and her keys. When the appellee entered her car to leave, the appellant came after her and dragged her out, after which he finally let her go. Finally, on September 9th, the wife testified that the husband restrained her in a bathroom while screaming at her. She stated that he would later grab her and throw her down on a couch and strangle her. Still later the appellant allegedly picked the appellee up and tossed her down onto the kitchen floor. He threatened to have sex with her against her will. The appel-

lant claimed to have bruises on her arms and legs after the incident. Throughout this incident the appellant allegedly was screaming at the wife, and at one point followed her into the children's bedroom while they were sleeping.

The appellee testified that she did not immediately report the September 9th incident to the police. The appellee was eventually able to convince her husband to leave home, partly by threatening to get a restraining order against him, while the appellee stayed at the marital residence. However, when the appellee left to go on a two-week business trip in early October (after leaving the children with her parents), the appellant re-entered the marital residence and looked through her personal things. He also tried to regain custody of his children from the appellee's parents. When the wife returned to the marital residence after her trip, the husband refused to leave, claiming that the house was as much his as it was hers. The appellee then filed a Protection From Abuse Petition the next day.

The appellant testified that these incidents usually occurred after appellant had been drinking, and that he had a Dr. Jekyll/Mr. Hyde personality when he consumed alcohol. She specifically testified that the last two incidents occurred while the appellant was under the influence.

Two witnesses corroborated parts of appellee's story. The appellee's pastor, Rev. John Raymond Centrella, recounted that on August 2nd, the appellee appeared distressed at a picnic his church was holding. He related that appellee came to the picnic crying and that, when asked what was wrong, she told him that her Husband had pushed and shoved her around. He testified that she had bruises on her arm. Appellee's mother also testified that following the August 2nd and September 9th incidents her daughter was bruised and told her about the fights between her and the appellant.

The appellant, when he testified, did not deny that incidents occurred. He stated that the June 20th incident simply involved name calling on his part and no physical abuse. He admitted that during the August 2nd incident he restrained

the appellee for a period of ten–fifteen minutes by grabbing her arms. Finally, during the September 9th incident, he related that pushing and shoving on both sides went on, and that he had restrained his wife like he had done at the August 2nd incident. He confessed also to being drunk at the September 9th incident, and that he had a drinking problem.

After hearing all the evidence and listening to closing arguments, the trial court issued an Order which, *inter alia*, prohibited the appellant from returning to the marital residence for a period of six months.[1] The Court rejected the appellant's argument that the incidents *sub judice* were not of sufficient gravity to fall within the confines of the Protection From Abuse Act. The court decreed that the escalating nature of the couple's fights, plus the two incidents where physical contact occurred, made this a case falling within the Protection From Abuse Act's proscriptions. It is from the court's Order that this appeal arises.

1. It is clear that the six-month period governed by the October 29, 1992, order has passed. At oral argument, we raised from the bench the issue of mootness. The appellant argued that this issue does not exist because the Final Protection From Abuse Order could impact on the way a trial court views the equities in a divorce or child custody proceeding. We are not totally persuaded by this argument, and do not rely on it presently. We prefer, instead, to rely on the much sounder basis that this case falls into the well-recognized exception to the mootness doctrine of a case which has important public policy considerations and yet may escape review. *Sagan in Behalf of Registered Voters of Com. v. Pennsylvania Public Television Network*, 518 Pa. 564, 566 n. 2, 544 A.2d 1309, 1310 n. 2 (1988); *In re Estate of Dorone*, 349 Pa.Super. 59, 65, 502 A.2d 1271, 1274 (1985), *aff'd* 517 Pa. 3, 534 A.2d 452. Protection From Abuse Act Orders are usually temporary, and it is seldom that we have the opportunity to review one before it expires. Moreover, this case deals with the important questions of (1) how narrowly must a trial court construe a Protection From Abuse Petition and (2) what quantum of evidence is necessary to sustain a case under this Act.

We note that in *Rosenburg v. Rosenburg*, 350 Pa.Super. 268, 504 A.2d 350 (1986), this court stated that the Act was designed to provide immediate protection against physical abuse and not to provide a procedure for determining other issues such as custody of the children. In light of that decision, we would hope that trial courts will be wary of prejudging a custody or divorce case based on a determination which has at its roots the elimination of the possibility that physical violence towards a spouse might occur.

The appellant raises three issues on appeal: (1) whether the lower court erred in admitting, over appellant's objection, evidence of abuse incidents not pleaded in her petition; (2) whether the court erred in finding that the evidence presented was sufficient to establish that abuse occurred as defined by the Protection From Abuse Act; and (3) whether the court erred in directing as a remedy the exclusion of the husband from the jointly owned marital residence where less burdensome alternative remedies existed.

The first issue raised by appellant is whether the lower court erred in admitting, over his objection, evidence of prior abuse incidents not "pleaded" in his wife's Petition. The appellant claims that the examination of prior incidents of abuse is tantamount to recovering on different "causes of action" than the one that appears in the wife's Petition. He notes that only the September 9th incident appears as a "cause of action" in the wife's Petition. The appellant asserts that it is a fundamental principle of law that a defendant should not be called to defend against matters of which he has no notice in the pleadings. *Quinlan and Robertson v. Rundle*, 273 Pa. 479, 117 A. 208 (1922); *Pa. R. Co. v. Pittsburgh*, 335 Pa. 449, 6 A.2d 907 (1939); *see also Cantwell v. Cantwell*, 179 Pa.Super. 452, 115 A.2d 801 (1955).

We are unpersuaded by appellant's analogy comparing incidents of abuse in an Abuse Petition with causes of action in a civil complaint. The Protection From Abuse Act was not, nor was meant to be, a statute penalizing past criminal conduct. Rather, the primary goal of the act is not retrospective punishment but "advance prevention of physical and sexual abuse." *Eichenlaub v. Eichenlaub*, 340 Pa.Super. 552, 560, 490 A.2d 918, 922 (1985), *quoting Commonwealth v. Allen*, 506 Pa. 500, 515, 486 A.2d 363, 370 (1984). We have described the Act as a "vanguard measure dealing with the problems of wife and child abuse." *Cipolla v. Cipolla*, 264 Pa.Super. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979). In passing the statute, the legislature recognized that existing legal remedies were inadequate to deal with this horrific problem and that a new way of proceeding would be more efficacious. *See* D. Flynn,

"Domestic Relations—The Protection From Abuse Act—Pa. Stat.Ann. tit. 35, §§ 10181–10190 (Purdon Supp.1977)," 51 Temple L.Q. 116, 116–20 (1978); Comment, "Spouse Abuse: A Novel Remedy for a Historic Problem," 84 Dickinson L.Rev. 147, 153–5 (1980); Note, "Relief for Victim of Intra–Family Assaults: The Pennsylvania Protection From Abuse Act," 81 Dickinson L.Rev. 815 (1977).

We believe that the statute does not anticipate that a person filing a Petition will be rigorously limited to the specific allegations of abuse found in that Petition. The statute provides simply that in commencing a proceeding under the Act, a Petition must be filed with a court alleging abuse by a defendant:

### § 6106. Commencement of proceedings

(a) **General rule.**—An adult or an emancipated minor may seek relief under this chapter for that person or any parent, adult household member or guardian ad litem may seek relief under this chapter on behalf of minor children, or a guardian of the person of an adult who has been declared incompetent under 20 Pa.C.S. Ch. 51 Subch. B (relating to appointment of guardian) may seek relief on behalf of the incompetent adult, *by filing a petition with the court alleging abuse by the defendant.*

Similarly, the statute provides in § 6107 that the plaintiff must prove, by a preponderance of the evidence, an allegation of *abuse.* Finally, the statute provides in § 6108, entitled "Relief," that the court may grant any protection order or approve any consent agreement to bring about a *cessation of abuse.* Accordingly, the statute's tenor is to focus on the prevention of abuse in the generic sense. The statute does not provide, we believe purposefully, what detail allegations of abuse must be made, or whether a Petitioner can bring up at trial incidents or details not written down in the Petition.

In *Eichenlaub v. Eichenlaub, supra,* we had to decide whether a provision in the Protection From Abuse Act violates the United States and Pennsylvania Constitutions because it denies the right to a jury trial for those charged with indirect

criminal contempt under the Act. We held that the provision was Constitutional, recognizing that the provision was one of several which enabled a court to respond quickly and flexibly to advance warnings of abuse. *Id.* 340 Pa.Super. at 560–2, 490 A.2d at 922–3. We quoted with approval the trial court's reflections as to the Act's purpose as applied to a contempt proceeding under the Act:

> The emergency nature of the judicial process pursuant to the Protection From Abuse Act requires that this Court act swiftly to prevent continued abuse and deal with contempt situations in an expeditious manner lest the violation giving rise to the contempt become a criminal action for homicide. Faced with life and death situations, this Court must utilize its expertise in such matters to enforce its orders without the time delay involved in a jury trial. To afford a jury trial in all instances of indirect criminal contempt for violation of a Protection From Abuse Act order would, in essence, wipe out the legislatively created remedy and enforcement under said Act.

*Id.* at 561, 490 A.2d at 922, *quoting* Slip op. of trial ct. at 11. Although the Act grants the power on a trial court to impose for contempt a $1,000 fine in addition to a jail term of up to six months, we found that these sanctions did not make the contempt violation such a serious offense as to require a jury trial. *Id.* at 556–60, 490 A.2d at 920–2. We noted that summary disposition is important to the administration of the Act, and to require a jury trial would frustrate the effectiveness of the Act. *Id.* at 562, 490 A.2d at 923.

Presently, we read the Act, as we did in *Eichenlaub,* in light of its purpose to prevent imminent harm to abused person(s). We find the appellant's proposed requirements pleading of specificity without basis in either the text or the spirit of the Act. Such a requirement could potentially frustrate the expeditious nature of the Act.[2]

---

2. We note that the Petition filed by the appellee was completed *pro se.* A requirement that Abuse Petitions delineate for the accused abuser all the incidents of abuse would place an impracticable burden on the Petitioner.

504

 We do not believe, of course, that the trial court has unlimited authority in determining whether past incidents of abuse should be admitted or excluded. There will be times when the alleged incidents of abuse are too remote or too insignificant to have much relevance to the court's determination. We have oft declared that "questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, and may be reversed on appeal only when a clear abuse of discretion is apparent." *Soda v. Baird,* 411 Pa.Super. 80, 86, 600 A.2d 1274, 1277 (1991); *Lewis v. Pruitt,* 337 Pa.Super. 419, 428, 487 A.2d 16, 20 (1985). We feel this is an appropriate appellate standard of review in the case *sub judice.*[3] Under this standard, given the recent nature of the incidents and their probative relevance, we find no abuse of discretion occurred.

The appellant's second argument is that the court erred in finding that the evidence was sufficient to establish that abuse occurred as defined in the Act. The appellant argues that the evidence indicates that there was no attempt to cause serious bodily injury or even bodily injury, and no such injury was, in fact, caused. He claims that his wife was not placed in fear of imminent serious bodily injury by physical menace or of being sexually abused. While admitting that he restrained the appellant on at least two occasions, at one point holding the wife's arms for up to fifteen minutes, he does not believe that this conduct violates the Act. Finally, the appellant asks us to take into consideration the fact that the wife filed her Petition more than forty days after the date of the last incident.

 We preliminarily address what standard of review we should use in looking at the lower court's decision. As noted *supra,* the Protection From Abuse Act does not seek to determine criminal culpability. A Petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only

3. We note that there may be occasion when a person defending a Protection From Abuse Action is unfairly surprised by allegations not raised in an Abuse Petition. If such is the case, the trial court could consider granting a short continuance and granting in an *ex parte* proceeding a temporary order granting relief. See 23 Pa.C.S.A. § 6107.

to establish it by a preponderance of the evidence. *See* 23 Pa.C.S.A. § 6107(a) ("the plaintiff must prove the allegation of abuse by a preponderance of the evidence"). We have declared that the standard for reviewing the sufficiency of the evidence in analogous circumstances is as follows:

> In considering the sufficiency of the evidence to sustain the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict. *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 24, 521 A.2d 451, 454 (1987). See also *Laniecki v. Polish Army Veterans Assoc.,* 331 Pa.Super. 413, 417, 480 A.2d 1101, 1103 (1984). *Cooper v. Burns,* 376 Pa.Super. 276, 280–81, 545 A.2d 935, 937 (1988), as quoted in *Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 573, 574 A.2d 1084, 1088 (1990).

Accordingly, we review presently whether the evidence in the light most favorable to the Petitioner and granting her the benefit of all reasonable inferences, was sufficient to sustain the trial court's determination that abuse was shown by a preponderance of the evidence.

Having determined our standard of review, we analyze presently whether the evidence was sufficient. The Act sets forth in 23 Pa.C.S.A. § 6102 what constitutes "abuse":

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, spousal sexual assault or involuntary deviate sexual intercourse with or without a deadly weapon.
>
> (2) Placing by physical menace another in fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

We believe, viewing the evidence in the light most favorable to the appellee, that abuse has been established, at a minimum, under subsections (2) and (3).

■ The evidence can reasonably be construed to prove that the appellee was placed by the appellant's physical menace in fear of imminent serious bodily harm. During the August 2nd incident, the appellee testified that her husband waited behind the door for her to come home. He then attempted to grab her purse and her keys, and when the appellee fled to her car, the appellant came after her and dragged her out, after which he finally let her go. The appellee testified that he held his wife securely for ten–fifteen minutes during this incident. During the September 9th incident, the wife testified that the husband forcibly restrained her several times yet again while screaming at her. He picked her up on two occasions and threw her down twice. After throwing her down on the couch, he strangled her. When he threw her down on the kitchen floor, he threatened to have sex with her. The appellant's physical contact was to the extent where the appellee was bruised on various places of her body after the prolonged incident. Viewed in the light most favorable to the appellee, the evidence establishes a violation of subsection (2). We believe that the statute views this conduct as abusive, as the appellant's increasingly bellicose behavior could reasonably have her in fear of imminent serious bodily harm. It was a proper exercise of discretion for the court to enter an appropriate order to prevent future harm to the appellee.

Although a closer question, a violation of subsection (3) can be reasonably determined to exist. Subsection (3) adopts a criminal code definition for an abuse determination in the context of restraint. The subsection states abuse occurs when a defendant inflicts false imprisonment pursuant to 18 Pa. C.S.A. § 2903. Section 2903 in turn states "a person commits a misdemeanor of the second degree if he knowingly restrains

another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S.A. § 2903.

In the recent case *Commonwealth v. Enders,* 407 Pa.Super. 201, 595 A.2d 600 (1991), we had an opportunity to address a challenge to the sufficiency of the evidence in a case where defendants were convicted of false imprisonment. In *Enders,* the victim alleged that he had been forcibly taken by several acquaintances to an abandoned barn, was tied down over a pentagram, and an occult ritual was performed over him. During the ritual, a leather collar with nails facing inwards was placed around his neck. One of his acquaintances pressed on the collar, drawing blood, which he then placed to his lips. The victim was released after the ritual with a warning not to reveal the ceremony to the authorities. The victim did tell the authorities, and persons involved with this incident were subsequently found guilty of false imprisonment in a jury trial. On appeal, construing the evidence in the light most favorable to the verdict winner, the Commonwealth, we found almost without comment, that the evidence was sufficient to support a conviction of false imprisonment. *Id.* at 206, 595 A.2d at 603. Although we recognized that the convictions rested largely on the victim's credibility, we noted that credibility is the sole province of the jury. *Id.*

Presently, the appellant has admitted to restraining the appellee during two of the incidents *supra.* During one incident, he admitted restraining her for a period of ten-fifteen minutes. The appellee claimed that during the last incident appellant continually screamed at her, and at points during the incident strangled her, threw her down twice and threatened her with sexual abuse. Viewing the evidence in the light most favorable to the appellee, as we must, we believe there was sufficient evidence for the court to conclude by a preponderance of the evidence that the appellant knowingly restrained the appellee so as to interfere substantially with her liberty.

The appellant's final argument is that the court erred in directing as a remedy the exclusion of the husband from the

jointly owned marital residence where less burdensome alternative remedies existed. He asserts that the remedies under the Act are multiple and varied and allow a Court to tailor its order to the circumstances of each case. See 23 Pa.C.S.A. § 6108. The appellant argues that the evidence clearly indicates that the alleged incidents of abuse were sporadic, and the spouse was not in any danger of immediate harm. Consequently, he claims that the court simply could have ordered him to stop abusing his wife, or alternatively, not to have any contact with her. He feels the court did not have to impose the most severe remedy possible: excluding the husband from the marital residence.

We find meritless appellant's argument. We disagree with appellant's contention that the inquiry involves determining whether the court committed an error of law. We believe the statute anticipates that a trial court possesses discretion in choosing between the remedies the Act affords. The statute states that any order or consent agreement sanctioned by the trial court *may* include several delineate remedies. 23 Pa. C.S.A. § 6108. The use of the word "may," and the several remedies, some of them alternative remedies, which the Act provides, indicates that the legislature believed the choice of a remedy was within the discretion of the trial court. Accordingly, we will review the trial court's determination as to an appropriate remedy in a Protection From Abuse Act case should be reviewed only for an abuse of discretion.

An "abuse of discretion" exists where "the lower court's judgment is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will ... or without support in the record." *In re Baby Girl D,* 512 Pa. 449, 453-4, 517 A.2d 925, 927 (1986); *accord, Commonwealth v. Lane,* 492 Pa. 544, 549, 424 A.2d 1325, 1328 (1981). We do not believe the trial court abused its discretion by allegedly failing to select the least burdensome remedy possible for the following two reasons.

First, we believe that the Act does not anticipate the typical remedy would be to structure an Order so the abusive

spouse can remain in the marital residence with the abused person(s). The tenor of the Act is that removal of an abusive spouse from the marital residence is the preferred method for dealing with these situations. See 23 Pa.C.S.A. § 6108. We note that the Act not only provides the authority for a court to exclude a defendant from a particular residence, but allows the court to order more burdensome remedies. These more burdensome remedies include:

(4) Awarding temporary custody of or establishing temporary visitation rights with regard to minor children. A defendant shall not be granted custody or partial custody where it is alleged in the petition, and the court finds after a hearing under this chapter, that the defendant abused the minor children of the parties or where the defendant has been convicted of violating 18 Pa.C.S. § 2904 (relating to interference with custody of children) within two calendar years prior to the filing of the petition for protection order. If a plaintiff petitions for a temporary order under section 6107(b) (relating to hearings) and the defendant has partial, shared or full custody of the minor children of the parties by order of court or written agreement of the parties, the custody shall not be disturbed or changed unless the court finds that the defendant is likely to inflict abuse upon the children or to remove the children from the jurisdiction of the court prior to the hearing under section 6107(a). Nothing in this paragraph shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure. The court shall consider, and may impose on a custody award, conditions necessary to assure the safety of the plaintiff and minor children from abuse.

(5) After a hearing in accordance with section 6107(a), directing the defendant to pay financial support to those persons the defendant has a duty to support. The support order shall be temporary, and any beneficiary of the order must file a complaint for support under the provisions of Chapters 43 (relating to support matters generally) and 45 (relating to reciprocal enforcement of support orders) within

two weeks of the date of the issuance of the protection order. If a complaint for support is not filed, that portion of the protection order requiring the defendant to pay support is void. When there is a subsequent ruling on a complaint for support, the portion of the protection order requiring the defendant to pay support expires.

(6) Prohibiting the defendant from having any contact with the plaintiff, including, but not limited to, restraining the defendant from entering the place of employment or business or school of the plaintiff and from harassing the plaintiff or plaintiff's relatives or minor children.

(7) Ordering the defendant to temporarily relinquish to the sheriff the defendant's weapons which have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children. The court's order shall provide for the return of the weapons to the defendant subject to any restrictions and conditions as the court shall deem appropriate to protect the plaintiff or minor children from further abuse through the use of weapons.

(8) Directing the defendant to pay the plaintiff for reasonable losses suffered as a result of the abuse, including, medical, dental, relocation and moving expenses; counseling; loss of earnings or support; and other out-of-pocket losses for injuries sustained. In addition to out-of-pocket losses, the court may direct the defendant to pay reasonable attorney fees.

23 Pa.C.S.A. § 6108(a)(4)–(8). Thus, we find meritless appellant's contention that the court mandated the most severe remedy possible.

Second, our review of the evidence indicates that the remedy chosen was appropriate and that no abuse of discretion occurred. At the risk of repetition, we reiterate the following. Within a period of ninety days, as indicated *supra*, evidence existed from which the trial court could have found escalating incidents of abuse. These incidents included by the appellant's own admission the physical restraint of the appellee for fairly substantial periods of time. Moreover, there was evi-

dence in the record, viewing the evidence in the light most favorable to the appellee, that the appellant threw the appellant down several times and on the last occasion, threatened to have forced sex with her. The parties voluntarily agreed to separate because of the last incident's particular severity. Notwithstanding their mutual understanding, the appellant broke back into the marital residence while the appellee was on a business trip. He subsequently refused to vacate the premises. Under the circumstances, the court's decision to bar the appellant from the marital residence seems particularly sound.

We specifically reject the notion that the court abused its discretion by failing to more narrowly tailor an order which would allow the appellant to stay in the marital residence. The Act wisely contemplates a degree of judicial intervention as a form of risk control. Allowing both spouses to remain in the marital residence where abuse has occurred could potentially be a proscription for disaster. The purpose of the Act is to react to early signs of abuse and prevent more serious abuse from occurring. The court was clearly acting within its discretion in determining that exclusion from the marital residence was appropriate to safeguard against potentially more serious incidents of abuse. Nothing in the Act suggests that a lower court must risk taking the least burdensome remedy.

For the foregoing reasons, we affirm the order below.

Order affirmed.

WIEAND, J., files a concurring opinion.

WIEAND, Judge concurring:

Although I concur in the result, I write separately because I am in disagreement with at least two aspects of the majority's analysis. First, I believe it is erroneous to hold, as the majority does, that a petitioner for relief under the Protection From Abuse Act, 23 Pa.C.S. §§ 6101 et seq., is not required to plead with reasonable specificity those instances of abuse on which he or she relies to establish entitlement to relief under

the Act. Secondly, I disagree with the majority's suggestion that the preferred relief under the Act is removal of a spouse from the marital home.

"The Protection From Abuse Act is a vanguard measure dealing with the problems of wife and child abuse. It is designed to protect against abuse ... between family or household members who reside together...." *Cipolla v. Cipolla,* 264 Pa.Super. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979). See also: *Heard v. Heard,* 418 Pa.Super. 250, 257, 614 A.2d 255, 259 (1992). To commence proceedings under the Act, a petition "alleging abuse by the defendant" must be filed with the court. 23 Pa.C.S. § 6106(a). See also: *Heard v. Heard, supra* at 257, 614 A.2d at 259. Within ten days of the filing of a petition, a hearing is to be held at which the petitioner "must prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S. § 6107(a). See also: *Heard v. Heard, supra* at 256, 614 A.2d at 259.

I agree with appellant-husband that a defendant in a protection from abuse proceeding should not be required to defend against matters of which he has had no notice. Notice is fundamental to our system of jurisprudence, and the need therefor is recognized in both civil and criminal areas of the law. See: *Commonwealth v. Kelly,* 487 Pa. 174, 178, 409 A.2d 21, 23 (1979); *Freer v. Parker,* 411 Pa. 346, 347, 192 A.2d 348, 349 (1963); *Ingrassia Constr. Co. v. Walsh,* 337 Pa.Super. 58, 64, 486 A.2d 478, 481 (1984); *Commonwealth v. Speller,* 311 Pa.Super. 569, 579, 458 A.2d 198, 203 (1983). Our abhorrence of a variance between allegata and probata rests upon principles of fairness; we do not countenance undue surprise by allowing evidence of facts not pleaded. See: *Commonwealth v. Kelly, supra,* 487 Pa. at 178, 409 A.2d at 23; *Freer v. Parker, supra,* 411 Pa. at 347, 192 A.2d at 349.

This principle is equally important in matters covered by the Protection From Abuse Act. A defendant in such proceedings can be unfairly surprised by evidence offered at an abuse hearing where the subject thereof has not been alleged in the petition. Trial by surprise is unfair to the respondent who has been surprised and also to the court which may be

deprived of significant evidence in response. In such cases, the ability of the court to reach a just result is unnecessarily impaired. Therefore, I would hold that a protection from abuse petition must allege, with reasonable specificity, the particular incidents of abuse upon which the petitioner relies for relief.[1]

This requirement will not hamper the purposes of the Protection From Abuse Act. It will not place an impractical burden on the petitioner. What is difficult or burdensome, one may ask, about informing the defendant of the facts upon which the petitioner relies in proving entitlement to relief? This is the same requirement which we place on all plaintiffs in civil matters and the Commonwealth in criminal matters.

I also am unable to comprehend how the expeditious grant of relief under the Act will be diminished by such a requirement. The Act itself provides for the issuance of immediate, temporary orders for the protection of a petitioner. See: 23 Pa.C.S. § 6107(b). Requiring specificity in the petition will not abrogate or compromise that provision. In my best judgment, therefore, there simply is no good reason for not requiring of a petitioner a pleading adequate to inform the respondent of the allegations he or she will face at a hearing before such respondent can be compelled to move out of his or her own home. See: 23 Pa.C.S. § 6108(a)(2) & (3).

Instantly, the petition alleged an abusive incident on September 9, 1992. Therefore, only evidence impinging on the alleged September 9th incident should have been presented at hearing. Evidence of prior incidents should not have been allowed. In this case, however, the error was harmless. The prior incidents, in my judgment, were insignificant and involved nothing more than shouting matches not involving physical abuse. Although there clearly were prior arguments, the incidents did not involve physical abuse sufficient to

1. An exception may be required where, because of the fluidity of the circumstances, relevant events have occurred after the filing of the petition and before the hearing. Even in such cases, however, fairness to all parties can best be achieved by liberally allowing amendments to the petition. In the instant case, the additional incidents had occurred prior to the filing of the petition.

require removal of a spouse from the common residence. Because the evidence was heard by a court without a jury, the additional evidence was not such as to destroy or impair the fact-finder's ability to hear and decide the case impartially regarding the incident alleged in the petition.

"It is up to the trial court as fact finder, to judge the credibility of witnesses and to weigh their testimony. On appeal, it is not the duty of [the appellate] court to find facts, but to determine if there is evidence in the record to support the trial court's findings. Findings of fact made by the trial court and supported in the record may not be overturned absent an abuse of discretion." *Heard v. Heard, supra,* 418 Pa.Super. at 258–259, 614 A.2d at 260 (citations omitted). Here, the trial court found that appellee had been physically abused by appellant on September 9, 1992, and appellee's evidence supports the court's finding that the dispute between the parties became physical.

If I had been the hearing judge, I may not have found it necessary to evict appellant from his own home in order to protect appellee from future abuse. Appellant does not appear from the record to be a violent person, and any physical abuse inflicted upon his spouse appears to have occurred as a consequence of marital discord for which appellee is not completely blameless. I disagree vigorously with the majority's suggestion that the preferred relief under the statute is to require a spouse to vacate his or her own home. The statute expresses no such preference, and for the courts to do so is to exceed the purpose of the statute to prevent physical abuse. Certainly not every incident of marital discord recommends that a court determine who shall go and who shall stay in the marital home.

I agree, nevertheless, that the trial court's order in the instant case must be affirmed. Because the Act empowers trial courts to grant broad relief to protect against anticipated abuse, much must be left to the discretion of the trial court. It follows that an appellate court may not substitute its judgment for that of the trial court and will not disturb the trial court's order unless there has been an abuse of discre-

tion. Here, even though I may have granted different relief, I cannot say that the trial court's order was an abuse of discretion. Therefore, I concur in the decision to affirm the court's order.