## Gabel v. Gabel

*Christopher H. Minzer,* for appellee.
*Francis Recchuiti,* for appellant.

84

CARPENTER, *J.,* July 18, 1994—

PREFACE

On the battlefields of domestic warfare, children are not only the casualties of parental combat, but they are increasingly becoming a pawn in the game of divorce, being used by one parent to spite the other. As the parents become entrenched in their positions, children may find themselves in no-man's-land. These feelings of uncertainty and estrangement tend to compel children to ally themselves with one of their parents, a parent with whom the other parent is often at odds. One of the unfortunate consequences of a situation such as this is the ensuing hostility created between a parent and child. Similar to what transpired in the instant case, this hostility may grow to potentially harmful levels in the absence of the employment of common sense on the part of a parent. When the parent refuses to participate in family counseling, as did the mother in this case, the likelihood that such a situation will culminate in violence increases. The resulting emotional harm may be difficult to measure; however, as evidenced by this case, the *potential* for physical and emotional abuse is unmistakable. The Protection from Abuse Act is a legislative attempt to afford protection to individuals, including children, against harm caused by the combatants of domestic warfare in the course of their struggles.

Here, this court was confronted with the issue of whether or not the PFA Act was intended to protect a daughter who, after allying herself with her father in the midst

of a family breakup, provoked her mother to engage in conduct, and to utter words, which proved to be harmful to the daughter. This court concluded that the daughter was entitled to be protected under the PFA Act. Also, this court found that because the mother was an adult, and presumably wiser and more mature, she should have exercised restraint in her actions and words so as to conduct herself in a more appropriate manner. This court found that the mother's actions were neither justified nor disciplinary in nature and concluded that she had abused her daughter as defined by 23 Pa.C.S. §6102(a). Ultimately, this court determined that the mother should be excluded from the marital residence thereby preventing any further skirmishes between the mother and daughter. Accordingly, this court ordered a "cease-fire" for a period of six months pursuant to 23 Pa.C.S. §6108.

## FACTS

Michelle H. Gabel is the 14 year old daughter of Dana G. Gabel and Sandra L. Gabel, "appellant," parents in the process of obtaining a divorce. Mr. Gabel, Michelle, and appellant, were all living in the same East Greenville home when the disputes relevant to this case took place.

On April 28, 1994, Michelle splashed a small quantity of a liquid substance that she was drinking on appellant. Appellant responded by forcefully grabbing her daughter, forcing Michelle onto her back then onto a sofa, and proceeded to shake her violently while screaming at her. (N.T. p. 11, May 12, 1994.) Fearing additional contact from her mother, Michelle yelled for her father and exited the house. *Id.*

On May 1, 1994, Michelle went into the bathroom of her home to question her mother about the location of certain family photographs. After not receiving an answer satisfactory to her, Michelle persisted with her inquiry and a verbal altercation ensued. At some point during this argument, Michelle had positioned herself in such a way so as to hinder appellant's ability to leave the bathroom. In an attempt to move Michelle out of her way and to exit the bathroom, appellant pushed Michelle up against the closed bathroom door. Appellant, still attempting to move Michelle, began to forcibly push and shove her daughter, and, at one point, struck Michelle in the ribs with her knee. (N.T. p. 5, May 12, 1994.) As a result of appellant's physical contact, Michelle sustained the following injuries: black and blue marks on her left and right forearms, on her right lower buttock, and on one of her biceps, and bruises on her rib cage and on one of her hips. (N.T. pp. 5-8, May 12, 1994.) Initially, these injuries made respiration painful for Michelle, and as a result of the altercation she sought medical attention. (N.T. p. 5, May 12, 1994.) Additionally, she became fearful of further abusiveness towards her by appellant. (N.T. p. 14, May 12, 1994.) Michelle's fear of appellant was increased by appellant's refusal to participate in family counseling. (N.T. pp. 14-15, May 12, 1994.)

On May 3, 1994, Mr. Gabel filed a petition for protection from abuse on behalf of his daughter. A temporary order for protection from abuse was signed by the Honorable Albert R. Subers on the same day. Pursuant to a hearing held by this court on May 12, a final protection from abuse order was entered enjoining appellant from living

at, entering, or loitering about the marital residence. Appellant subsequently filed post-trial motions. So that this court could properly rule on these motions, we ordered an excerpt of the notes of testimony from the May 12 hearing to be transcribed; namely, the testimony of Michelle Gabel.

This court received a notice of appeal from the Superior Court on or about June 17, 1994. Appellant, however, did not serve a copy of their notice of appeal on this court, nor did she order the transcription of the remaining notes of testimony for the hearing held on May 12, 1994.

## DISCUSSION

As previously stated, the instant appeal centers around this court's finding that appellant abused her daughter within the meaning of the PFA Act. This court, therefore, finds it relevant to discuss the standard of review regarding protection of abuse cases. The standard of review on appeal for protection from abuse cases is clearly articulated by the Superior Court *in Snyder v. Snyder* 427 Pa. Super 494, 629 A.2d 977 (1993):

"In considering the sufficiency of the evidence to sustain the verdict, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict." *Id.* at 505, 629 A.2d at 982 (citing *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa. Super. 17, 24, 521 A.2d 451, 454 (1987)); see also, *Taylor v. Celotex Corp.,* 393 Pa. Super. 566, 573, 574 A.2d 1084, 1088 (1990).

Also, PFA petitioners are not required to establish the occurrence of abuse beyond a reasonable doubt, rather, they need only to prove the allegation of abuse by a preponderance of the evidence. 23 Pa.C.S. §6107(a); *Snyder v. Snyder, supra* at 504-05, 629 A.2d at 982. The facts of this case are essentially undisputed, and this court found that Mr. Gabel and Michelle established the requisite burden of proving that abuse had occurred.

In her concise statement of matters complained of, appellant contends that no abuse has occurred. The PFA Act defines abuse as follows:

"Section 6102. Definitions

"(a) General rule....

" 'Abuse.' The occurrence of one or more of the following acts between family or household members [ ]:

"(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury [or] serious bodily injury ... with or without a deadly weapon.

"(2) Placing by physical menace another in fear of imminent serious bodily injury.

"(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. §2903 (relating to false imprisonment).

"(4) Physically [ ] abusing minor children, including such terms as defined in chapter 63 (relating to child protective services)." 23 Pa.C.S. §6102(a)(1)-(a)(4).

The testimony of both appellant and her daughter revealed that appellant had, in fact, intentionally caused bodily injury to her daughter. This fact remains essentially

undisputed. However, appellant maintains, as averred in her concise statement of matters complained of, that no abuse has taken place. Evidently, appellant feels that because she may have been provoked into causing bodily harm to her daughter, her conduct is somehow taken outside the statutory definition of abuse. Appellant, apparently, does not contest this court's finding that she acted intentionally in causing bodily harm to her daughter.

To rule that no abuse had taken place, this court would have had to find that the conduct of the mother was somehow beyond the spectrum of physical contact to which the PFA Act applies. However, the PFA Act's definition of abuse is rather unambiguous. Appellant caused significant bodily injury to her minor daughter and does not dispute this fact, nor does she propose any authority to substantiate the contention that provocation is a pertinent factor in the determination of whether abuse has occurred. This court found that no such exception, relating to provocation, exists in the statutes or case law of this and neighboring jurisdictions. Therefore, this court found that abuse had occurred under sections 6102(a)(1), (2), and (4) of the PFA Act.

Moreover, this court was not compelled to create such an exception since it seems contrary to common sense to hold that the abusive actions of an adult toward a 14 year old child are justifiable solely because provocation may have been involved. The unreasonableness of this becomes more apparent when considering that this purported provocation did not entail any physically threatening gestures or conduct on the part of the daughter, but was substantially in form of irreverent behavior.

Furthermore, even if a certain degree of provocation was involved, this court does not believe that it ever rose to a level which would justify the injuries suffered by this child. Given the disparity in age, the mother should have been able to act responsibly, restraining herself so as not to be abusive towards her adolescent daughter. It was the mother who was responsible for causing the argument to escalate into a physically damaging confrontation. Even though the behavior of the daughter may have been incorrigible, appellant should have been able to realize, through the simple use of common sense, that it was not appropriate for her to make such harmful physical contact with her daughter— a child who is apparently having some difficulty dealing with the rift which the pending divorce of her parents has caused to manifest within her family.

Though not directly averred in her concise statement of matters complained of, it can be reasonably inferred that appellant is suggesting that her actions are justifiable because they serve some sort of disciplinary function. This court found that this was not the case. Appellant's physical contact with her daughter was retaliatory in nature, a reaction to the anger which her daughter's behavior instilled within her. Kneeing a child in the ribs and causing rather extensive injuries does not comport with any traditional notion of discipline, nor is it reasonably calculated to achieve any remedial purpose. Rather than "grounding" the child, or doing something which accords with currently acceptable methods of discipline, the mother allowed an unsound emotional response to dictate her actions and failed to exercise the restraint which most rational parents

would use before lashing out against their child with physical force and abusive language.

Rather than being motivated by some desire to correct the behavior of her daughter, it appears that appellant was driven by the spontaneous anger by which she was overcome. This is not acceptable. Indeed, this is precisely the type of parental abuse against which the PFA Act was intended to protect.

Lastly, it should be noted that appellant has failed to order the transcription of the notes of testimony for the May 12 hearing. It is the duty of appellants to order the transcription of the notes of testimony and to include this order with their notice of appeal. Pa.R.A.P. 1911(a), 42 Pa.C.S.; Pa.R.J.A. 5000.5(b). This court was never served with a notice of appeal from appellant, nor did we receive any order to transcribe the notes of testimony. Consequently, the only notes of testimony available for appellate review are those which this court ordered to be transcribed, an excerpt consisting only of Michelle Gabel's testimony. It is likely that appellant's failure to comply with Pa.R.A.P. 1911(a) and Pa.R.J.A. 5000.5(b), and the resulting incomplete record, may frustrate the Superior Court's efforts to conduct a meaningful appellate review. It is logical to conclude that appellant did not order the notes of testimony to be transcribed because the information that would be presented to the Superior Court would be information contrary to appellant's position.

## CONCLUSION

This court found that appellant's pattern of behavior was highly inappropriate, that it was not for the purpose of disciplining the child, and that it was not justified

by any provocation which may have been involved in this case. Accordingly, this court found that appellant had abused her daughter, and that in order to insure that no further abuse would take place, it was imperative to separate the two for a period of six months. This is exactly the type of protection which the PFA Act was intended to enable the courts to afford to abused children: "The [very] purpose of the [PFA] Act is to react to early signs of abuse and prevent more serious abuse from occurring." *Snyder v. Snyder, supra* at 511, 629 A.2d at 986. This court took the steps which we deemed to be appropriate and consistent with this objective. The best interests of the 14 year old, Michelle Gabel, having been verbally battered and physically assaulted, dictated the result here. If this court erred, we erred on the side of protecting the child.

Based on the foregoing analysis, the order of this court should be affirmed.