J-A16043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| R.B. | : | No. 114 MDA 2019 |

Appeal from the Order Entered December 13, 2018
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201813124

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 12, 2019**

Appellant A.H. appeals from the order of the Court of Common Pleas of Luzerne County denying her petition for a Final Protection From Abuse (PFA) that she filed pursuant to the PFA Act (23 Pa.C.S.A. §§ 6101-6222).   After careful review, we affirm.

On November 19, 2018, Appellant filed her petition for a PFA order on behalf of herself and her minor son (hereinafter "Child") against R.B., who is Appellant's ex-boyfriend and the father of Child.  Child is now five years old (DOB 2/7/14).  On November 19, 2018, a temporary PFA order was entered which gave Appellant exclusive custody of Child until a hearing could be held on a final PFA order.  The temporary PFA order prohibited R.B. from any contact with Appellant or Child, including through social media or texting.

On December 13, 2018, the trial court held a full evidentiary hearing on the petition at which the following factual background was developed.

---

*   Former Justice specially assigned to the Superior Court.

Previous to the filing of the PFA, the parties had arranged for R.B. to have primary physical custody of Child. Appellant admits that due to lack of stability in her own life, she agreed that it was best for Child to stay with R.B.

However, Appellant alleged that R.B. would try to keep Child from her and has repeatedly made verbal threats to her over the past three years, including that he would stab Appellant if she ever tried to get custody of Child. Specifically, Appellant recalled a particular incident that occurred on November 16, 2018, in which R.B. sent her a text message with a photo of a box of kitchen knives, told her over the phone that he was "coming for her," and then arrived at her workplace at a local restaurant with Child sleeping on his shoulder. Notes of Testimony (N.T.), 12/13/18, at 8. Even though R.B. had no contact with Appellant while at the restaurant, Appellant suggested R.B. was taunting her by bringing Child to the restaurant despite not letting Appellant see Child outside of work. Appellant also indicated R.B. knew that a stabbing threat and the picture of kitchen knives would scare her, as her father was brutally stabbed by a woman in 2009 with a set of kitchen knives.

Although Appellant conceded that R.B. had never physically assaulted her in the past, she felt that she was at risk as R.B. had an extensive history of violence toward other individuals. Appellant also argued that she did not feel comfortable with R.B. having unsupervised contact with Child, pointing to an incident on the prior Monday in which Child called her from the bathroom of R.B.'s home, crying and in an inconsolable state. Appellant admitted that she did not know what was going on, but indicated that this behavior was

- 2 -

unusual for her son.   At that point, Appellant called the Kingston Police Department to do a safety check on Child.   After the safety check was performed, Kingston police officers did not remove Child from R.B.'s home.

On cross-examination, Appellant admitted that at the beginning of November, she sent numerous text messages to R.B., demanding shared custody of Child.   In addition, after the incident in which R.B. came to Appellant's workplace, Appellant and R.B. argued over text messaging about the custody arrangement over the upcoming Thanksgiving holiday.   Despite Appellant's claim that R.B. had verbally abused her over the past three years, Appellant admitted that she had recently gone on two vacations with R.B. and Child.   Appellant also conceded that she allowed Child to spend five overnight visits with R.B. before the hearing.

After Appellant admitted that she had a close relationship with R.B.'s mother, B.L.B., and would often confide in her, B.L.B. testified that on the same day that Appellant filed the petition for a PFA, Appellant told her that she would "drop all charges" if R.B. came to the hearing and "signed 50/50 custody."   N.T., 12/13/18, at 8.   At the conclusion of the hearing, the trial court denied the final PFA and dismissed the action.   This appeal followed.

Appellant's sole claim on appeal is that the lower court erred in denying her petition for a final PFA order. In reviewing a challenge to the sufficiency of the evidence supporting the PFA order, this Court must view the evidence in the light most favorable to the verdict winner, giving the prevailing party the benefit of all reasonable inferences.   **S.W. v. S.F.**, 196 A.3d 224, 230

- 3 -

(Pa.Super. 2018). "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *Id.*

The PFA Act defines "abuse" in pertinent part, as:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> ***
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> ***
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102.

Moreover, this Court has provided that:

> "The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." *Snyder v. Snyder*, 427 Pa.Super. 494, 629 A.2d 977, 982 (1993). A "preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Raker v. Raker*, 847 A.2d 720, 724 (Pa.Super. 2004).
>
> ***
>
> In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. **See Raker, supra.** "The intent of the alleged abuser is of no moment." *Buchhalter*, 959 A.2d at 1263. Moreover, this Court has held that past acts are significant in determining the reasonableness of a PFA petitioner's fear. *Id.* at 1264. As the

goal of the Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the Act to apply. *Id.*

*K.B. v. Tinsley*, ___A.3d___, 2019 PA Super 116, *3 (April 15, 2019).

Viewing the evidence in the light most favorable to R.B. as the verdict winner, we conclude there was sufficient evidence to support the trial court's finding that Appellant did not prove that R.B.'s actions placed her in "reasonable fear of bodily injury." Based on the evidence presented, the trial court found that Appellant's filing of a petition for a three-year PFA against R.B. was a "clear attempt to get the upper-hand in her quest for obtaining shared custody of the parties' four-year-old son." Trial Court Opinion (T.C.O.), 2/26/19, at 3-4. The trial court initially noted that, prior to the institution of this action, Appellant had "abdicated her parental custodial rights in favor of [R.B.], recently wanted more involvement in their son's life," and had become notably frustrated when she had been unable to convince R.B. to give her a desired visitation arrangement with Child for the 2018 Thanksgiving holiday. T.C.O. at 1. Appellant filed her PFA petition thereafter on November 19, 2018.

The trial court acknowledged that Appellant had presented sufficient evidence for the issuance of a temporary PFA when she alleged that R.B. sent her a photo of the kitchen knives, told her he was coming to get her, threatened to kill her, and came to her place of employment with the parties' son to irritate Appellant.

However, the trial court found that Appellant negated her claim that she was fearful of R.B., as she had told R.B.'s mother that she would drop the PFA

petition if R.B. gave her equally-shared physical custody of Child. The trial court found R.B.'s mother testified credibly when she testified to these facts. Therefore, the trial court reasoned that Appellant "was indeed, no longer fearful, and … had been looking to the prospect of getting a permanent PFA in order to use [the] same as a bargaining chip" in the parties' custody disagreement. T.C.O., at 4.

In addition, the trial court pointed to additional testimony that called Appellant's credibility into question. Despite the fact that Appellant filed a PFA petition indicating that she did not want R.B. to have any unsupervised contact with Child and the temporary PFA order granted Appellant exclusive custody of Child, Appellant allowed Child to spend five unsupervised overnight visits with R.B. prior to the final PFA hearing. The trial court noted that Appellant admitted that R.B. had never exhibited violence toward her during their seven-year relationship or the subsequent year after their separation. The trial court also indicated that Appellant's concession that she went on vacation with R.B. on two separate occasions in 2018, "militated strongly against [Appellant] having claimed a fear factor covering the several years prior to the aforesaid 2018 Thanksgiving-related flare-up in the parties' relationship." T.C.O. at 2.

Based on the foregoing evidence, we conclude that the trial court did not err in denying Appellant's petition for PFA order against R.B. As a result, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/12/2019</u>