J-S25004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KARLA M. STANZ O/B/O K.M.D. AND K.A.D. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HAROLD A. DASHUTA | : | |
| | : | |
| Appellant | : | No. 610 EDA 2024 |

Appeal from the Order Entered February 14, 2024
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-48-PF-2024-00137

BEFORE: DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 1, 2024**

Appellant, Harold A. Dashuta, ("Father") appeals from the order that granted the Petition for Protection from Abuse ("PFA Petition") that Appellee Karla M. Stanz ("Mother") filed against Father on behalf of the parties' two minor children, K.M.D. and K.A.D.[1]  Father challenges both the sufficiency of the evidence to support the grant of the three-month PFA order and that the order does not provide him with visitation or telephone contact with the children.  Upon careful review, we affirm.

**A.**

We glean the following relevant factual and procedural history from the trial court opinion and the certified record.  Father and Mother, estranged spouses, share physical custody of their two children, 10-year-old K.M.D. and

---

[1] The trial court granted the order pursuant to the Protection from Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-22.

7-year-old K.A.D.  On February 3, 2024, the children were with Father, and Mother and Father had arranged that after the children's basketball game, the children were to go home with Mother.  Father drove the children to their basketball game, where he was the coach.  After the game, the children needed to retrieve their belongings from Father's car.  K.M.D. would not hug Father or say goodbye to him.  Father became enraged and walked away from the children.  K.A.D. followed Father to retrieve her belongings from the car and he "screamed at her to 'get away' from him[,]" causing K.A.D. to cry and run to Mother's car.  Trial Ct. Op., 3/21/24, at 3.

Mother then drove her car "right next to" Father's parked car so the children could retrieve their belongings.  *Id.* (quoting N.T. Hr'g, 2/14/24, at 7).  The children approached Father's car and when they were "an arm's length" away, Father "gun[ned] his accelerator, spe[d] forward, and c[ame] to a screeching halt."  *Id.* (quoting N.T. Hr'g at 7; internal quotation marks omitted).  Both children "jumped back into [Mother's] car and began crying and shaking."  *Id.* at 4.

On February 5, 2024, Mother sought a temporary PFA order based on this incident and two prior incidents in which Father had struck K.A.D. on the leg because she woke up at night to use the bathroom and had threatened to break the children's fingers if they touched his cell phone.  PFA Petition, 2/5/24, at 8.  Following an *ex parte* hearing, the court issued a rule to show cause why the PFA order should not be granted.

On February 14, 2024, the court held a final PFA hearing at which Mother, K.M.D., and K.A.D. testified. First, Mother testified in accordance with the above facts. She also testified that the children were "'shaky'" and "'cower[ed]' in fear" on other occasions after returning from spending time with Father. Trial Ct. Op. at 4 (quoting N.T. Hr'g at 32).

Next, K.M.D. testified that Father had driven past them "'really fast' when they were 'really close to the car'" then exited his car and began yelling. *Id.* (quoting N.T. Hr'g at 44, 47). She also testified that Father "yells a lot[,]" and had threatened to break all of the children's fingers if they touched his phone, called them "brats" and "shits", spanked her and K.A.D. once each, and once physically abused her by "jamm[ing] his head into [hers]" and "thr[owing]" her onto the couch where K.A.D. was sleeping. *Id.* at 4-5 (quoting N.T. Hr'g at 47-51; internal quotation marks omitted).

K.A.D. testified that Father had "pulled up fast" as the children stood near his car after the basketball game. *Id.* at 5 (quoting N.T. Hr'g at 63). She also testified that Father had yelled at her because she woke up in the middle of the night to use the restroom.[2] Finally, she testified that she is afraid of Father when he is angry and when he yells at her and stated that she "want[s] to go to Heaven instead of being with Daddy." *Id.* (quoting N.T. Hr'g at 65).

---

[2] Although the PFA Petition alleges that Father struck K.A.D. during this incident, she did not testify that Father struck her.

Following the hearing, the court entered a final PFA order against Father, barring contact with the children for a period of 3 months, to expire on May 14, 2024.[3] The court then offered Father supervised visitation, but his counsel adamantly declined, reiterating his denial twice because supervised visitation is "offensive." N.T. Hr'g at 88-89. Father did not request any other method of contact with the children, such as telephone contact. The final Order granted Mother sole physical custody of the children, and directed that Father may not, *inter alia*, communicate with the children by telephone. ***See*** Final PFA Order, 2/14/24, at 1, 2 ¶3.

**B.**

This timely appeal followed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

I. Did the trial court commit an error of law or abuse of discretion in entering the February 14, 2024 [PFA] order against [] Appellant?

II. Did the trial court commit an error of law or abuse of discretion in entering a [PFA] order which provides [] Mother with sole physical custody and [] Father with no periods of partial physical custody, visitation, or contact with the children whatsoever?

Appellant's Br. at 4.

---

[3] According to Mother, the PFA order was later extended to November 14, 2024, but the record does not confirm the extension. Mother's Br. at 4, n.1. Notably, this appeal is not moot even if the PFA order has expired because the factual basis for the custody provisions within the PFA order are "capable of repetition and apt to elude appellate review." ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1280 (Pa. Super. 2019) (citation omitted).

**C.**

In his first issue, Father challenges the sufficiency of the evidence supporting the grant of the PFA order. Appellant's Br. at 10-18. In considering the sufficiency of the evidence supporting a grant of PFA relief, we "view the evidence in the light most favorable to the verdict winner," and we "grant[] that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict." *Snyder v. Snyder*, 629 A.2d 977, 982 (Pa. Super. 1993) (citations omitted). Finally, the petitioner need only establish her case by a preponderance of the evidence to be entitled to relief. *See Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa. Super. 2007); *see also Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (defining preponderance as "the greater weight of the evidence, *i.e.*, to tip a scale slightly[.]").

The PFA Act defines the term "abuse" in pertinent part as "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury"; "[p]lacing another in reasonable fear of imminent serious bodily injury"; or "[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person . . . under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(a)(1), (2), (5).

When evaluating evidence in a PFA case, "the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury[.]" *Raker*, 847 A.2d at 725. After finding that the evidence supports

the elements of the PFA, the court may enter a final protection order for "a fixed period of time not to exceed three years." 23 Pa.C.S. § 6108(d).

Father first argues that the trial court "committed an error of law or abuse of discretion" in granting Mother's PFA petition for the three-month period because the evidence was insufficient to establish "abuse." Appellant's Br. at 10, 13. Specifically, he contends that hitting K.M.D.'s head with his and throwing her onto the couch was not "abuse" pursuant to Section 6102(a)(1) of the PFA Act because K.M.D. did not state when this occurred and, moreover, Father threw K.M.D. on the couch *next to* K.A.D., not at her, which does not indicate an attempt to cause serious bodily injury.[4] *Id.* at 14-15. He also asserts that rapidly accelerating his vehicle near the children was not "abuse" pursuant to subsection (a)(2) because there was no testimony that the children "were specifically fearful of sustaining serious bodily injury[,]" although they may have been "startled[.]" *Id*. at 16-17. Father further argues that the court erred in finding that his yelling at the children constituted "abuse" pursuant to Section (a)(5) because there is "no testimony that [the children] feared for their physical safety" due to his yelling and that "Fear of a Parent [*sic*] in general" is insufficient to establish abuse. *Id.* at 18. Finally,

---

[4] Father also notes that Mother did not include this incident in her PFA petition. Appellant's Br. at 14. However, it is proper for a trial court to admit evidence of prior abusive acts not raised in the PFA petition because "[p]ast abusive conduct on [Appellant's] part [is] a crucial inquiry necessary for entry of a proper order." *Raker*, 847 A.2d at 726 (citations omitted).

Father argues that there is "compelling evidence" that Mother used the PFA process "as a tool in [their] contentious custody litigation" because she filed the PFA petition three weeks after learning that he threatened to break the children's fingers, but only two days before his custody periods were scheduled to increase. *Id*. at 15-16.

Father's sufficiency argument is, in essence, a challenge to the trial court's determination regarding the weight of the evidence.[5] In other words, Father argues that his narrative of the facts demonstrates that the evidence does not meet the statutory definition of "abuse." However, when reviewing the sufficiency of the evidence, we do not accept Father's narrative, which is based on Father's cherry-picking evidence favorable to him and making inferences favorable to him; rather, we review the record as a whole and make reasonable inferences favorable to Mother.

Our review of the record reveals that the evidence supports a finding of abuse. With respect to subsection (a)(1), the record demonstrates that Father hit K.M.D.'s head with his own and threw her onto the sofa next to K.A.D. N.T. Hr'g at 51. It is reasonable to infer from this evidence that Father attempted to cause injury to both children. With respect to subsection (a)(2), the record reflects that in the parking lot after the basketball game, Father

---

[5] We note that Father has not preserved a challenge to the weight of the evidence on appeal because he has not, *inter alia*, raised it in his Rule 1925(b) Statement of Errors. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement. . .are waived.").

sped closely by the children and then stopped abruptly before getting out of the vehicle to yell at them, which caused the children to "jump[] back into" Mother's vehicle crying and shaking. *Id.* at 8. From these facts, it is reasonable to infer that the children were in reasonable fear of imminent serious bodily injury. Finally, the evidence supported a finding of abuse pursuant to subsection (a)(5) because Appellant's repeated yelling and threatening behavior placed the children in such fear that K.A.D. said "I want to go to Heaven instead of being with" Appellant. *Id.* at 65. Thus, the record reflects that the evidence was sufficient to meet the requirements to issue the PFA order.[6]

## D.

Father next asserts that the trial court abused its discretion by "not provid[ing] Father with telephone contact and supervised visits with the Children during the term of the Final Order." Appellant's Br. at 18-19. This argument is meritless.

We review a trial court's determination of the proper remedy in a PFA case for an abuse of discretion. *Snyder*, 629 A.2d at 984. "[A]n abuse of discretion occurs where the judgment is manifestly unreasonable or where the

---

[6] Father's argument regarding Mother's motive in filing the PFA petition is relevant only to establish bias and to impeach Mother's testimony. It has no substantive relevancy. Since Mother's motive is a question of Mother's credibility, this is a challenge to the weight of the evidence, which Father has not specifically challenged. Thus, we will not address this issue further.

law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." **Kaur v. Singh**, 259 A.3d 505, 509 (Pa. Super. 2021) (citation and quotation marks omitted).

The PFA Act mandates that a "defendant shall not be granted custody, partial custody[,] or unsupervised visitation where . . . the court finds after a hearing[], that the defendant [, *inter alia*] abused the minor children [] or poses a risk of abuse toward the minor children[.]" 23 Pa.C.S. § 6108(a)(4)(i)(A). The court, however, may provide supervised custody to a parent if a third party supervises the visit and "agree[s] to be accountable to the court for supervision." **Id.** at (a)(4)(ii).

Father argues that "it was [ ] an abuse of discretion not to provide Father with any contact or visitation with the Children whatsoever in the Final Order." Appellant's Br. at 19. He asserts that "given [the] significant periods of partial physical custody by agreement of the parties and order of court prior to the [PFA] petition, and the testimony presented at the hearing, it was an abuse of discretion to not provide [him] with telephone contact and supervised visits with the children." **Id.** at 19-20 (capitalization altered).

Father, however, fails to note that before the trial court issued the PFA order, the trial court asked Father three times if he wanted supervised visits, and each time, Father unequivocally declined the opportunity to visit with the children. Trial Ct. Op. at 14; N.T. Hr'g at 74-75. When the court asked why Father was declining supervised visits, counsel responded, "[i]t's offensive."

- 9 -

N.T. Hr'g at 75. Because Father unequivocally declined supervised visits when offered, Father has waived any challenge to the trial court's not authorizing supervised visits.

Father also argues that the court abused its discretion in not providing him with the opportunity to have telephone contact with the children. Father, however, never requested telephone contact and, thus, waived his claim that the trial court erred in not providing him with the opportunity for telephone contact. It is well-settled that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a).

**E.**

Having concluded that Father's challenges to the PFA order lack merit or he waived them, we affirm the PFA order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/01/2024</u>