J-S03032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.K., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| J.M. | : | |
| | : | |
| Appellant | : | No. 716 WDA 2020 |

Appeal from the Order Entered June 18, 2020
in the Court of Common Pleas of Venango County
Civil Division at No(s):  475-2020

BEFORE:   DUBOW, J., MURRAY, J. and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED:  March 26, 2021**

J.M. (Mother) appeals from the order entered June 18, 2020, pursuant to the Protection From Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122, granting the petition M.K. (Father) filed on behalf of the parties' son, Z.K.  We reverse.

Mother and Father are former spouses who have two children, Z.K., who was eleven years old at the time of these proceedings, and A.K., who was thirteen years old (collectively, the Children).[1]  On May 17, 2020, Mother and Father exchanged custody of the Children, with Mother bringing the Children back to her residence.  N.T., 6/10/2020, at 7, 31, 58.  After they arrived, an argument ensued between Mother and Z.K., which concluded with Mother going upstairs to her room.  *Id.* at 16-18, 35-36, 59.  A.K. fell and began to cry shortly thereafter, and Mother came back downstairs.  *Id.* at 7, 18-19, 31,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Children's birthdays do not appear in the record.

36, 59-60. According to Mother, Z.K. informed her smugly that he struck A.K. *Id.* at 60, 71. According to the Children, A.K. slipped and fell, and Mother assumed that Z.K. struck A.K. without asking. *Id.* at 7, 13-14, 20, 31-32, 36-39. In either event, the situation escalated. The testimony indicates that Mother spanked Z.K. twice on the buttocks, covered his mouth because he was screaming, "smacked" him once or twice on the face or head, and pushed his head into a pillow. *Id.* at 8, 13, 22-25, 28-29, 32-34, 39-44, 55-56, 61-69. This resulted in Z.K.'s ear being red and hurting to the touch for one to two hours. *Id.* at 33-34, 40, 44.

Father filed a PFA petition, which does not appear in the certified record, and the trial court entered a temporary PFA order on May 19, 2020, awarding him sole custody of the Children. The matter proceeded to a hearing on June 10, 2020, at which the Children, Father, Mother, and child protective services caseworker Dalton Shuler testified. Significantly, A.K. recorded a video of the May 17, 2020 incident using his cellphone. *Id.* at 9, 25-28. A.K. brought his cellphone with him to the hearing, and the court, the witnesses, and the parties' counsel viewed the video using the cellphone several times. *Id.* at 9-12, 28, 42, 69. However, no one marked the video as an exhibit or asked that the trial court admit it into evidence. There is also no indication in the record that the trial court admitted the video into evidence.

Following the hearing, on June 18, 2020, the trial court issued findings of fact and entered a final PFA order with an effective date of June 16, 2020, and an expiration date of December 16, 2020. The order included a temporary

custody provision granting Father sole custody of Z.K. and primary physical custody of A.K., and granting Mother partial physical custody of A.K. as agreed upon.[2, 3]

Mother timely filed a notice of appeal. The trial court ordered Mother to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). Mother filed a concise statement, which she amended the next day.[4]

Subsequently, Mother filed an application to withdraw her appeal in this Court. She averred that her counsel did not receive, and was not aware of, the trial court's June 18, 2020 findings of fact, rendering her counsel unable to include appropriate claims in her concise statement. She requested that this Court permit her to withdraw her appeal so that she could request an appeal *nunc pro tunc* in the trial court and raise appropriate claims. This Court denied Mother's application, but permitted her to file a supplemental concise statement. Mother filed her supplemental concise statement on October 29, 2020.

Mother now raises the following claims for our review.

_____

[2] The order specified that any subsequent custody order would supersede its temporary custody provision.

[3] The order also states that the trial court entered it "by agreement without an admission." Order, 6/18/2020, at 2. We note that our review of the record does not reveal any indication that Mother agreed to the entry of the order.

[4] Because the final PFA order included a child custody provision, this Court subsequently entered an order designating this as a Children's Fast Track appeal.

I. Whether the trial court erred in finding there was sufficient evidence to grant a PFA pursuant to [subsection 6102(a)(5)] of the [PFA] Act?

II. Whether the trial court erred in ruling that the parental privilege to use corporal punishment codified in section 509 of the Crimes Code does not prevent the issuance of a [PFA] Order when the parent does not violate the privilege?

Mother's Brief at 4.[5]

This Court reviews appeals from PFA orders for an abuse of discretion or error of law. *Diaz v. Nabiyev*, 235 A.3d 1270, 1273 (Pa. Super. 2020). Mother's appeal involves a challenge to the sufficiency of the evidence supporting the trial court's order. This Court has explained its review of sufficiency challenges under the PFA Act as follows.

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999)).

_____

[5] Although the final PFA order expired in December 2020, we do not dismiss Mother's appeal as moot. This appeal presents an exception to the mootness doctrine, as it involves a question "capable of repetition and apt to elude appellate review[.]" *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002); *see Snyder v. Snyder*, 629 A.2d 977, 980 n.1 (Pa. Super. 1993) (reviewing an expired six-month PFA order on the basis that it fell "into the well-recognized exception to the mootness doctrine of a case which has important public policy considerations and yet may escape review.").

Here, the trial court entered its order pursuant to subsection 6102(a)(5) of the PFA Act, which provides the following definition of "Abuse."

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> ***
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(5).

Mother contends in her first claim that the evidence was insufficient to support the trial court's finding that she engaged in a "course of conduct or repeatedly committing acts" as subsection 6102(a)(5) requires. Mother's Brief at 7-9. She maintains that she "smacked" Z.K. in the head once, which was a single act and not a course of conducted or repeated acts. *Id.* Mother also argues that she did not place Z.K. in reasonable fear of bodily injury. *Id.* at 7, 9-10. She insists that she "smacked" Z.K. with an open hand, and that she did not threaten him or use a weapon. *Id.* As part of this claim, Mother takes issue with the court's findings that she pinned Z.K. to the couch and that he suffered substantial pain, asserting that those findings lack record support or misrepresent the evidence. *Id.* at 8-9.

At the time the trial court entered its order on June 18, 2020, it issued findings of fact indicating merely that it found Mother abused Z.K. pursuant to subsection 6102(a)(5). The court went on to issue two opinions. In the court's first opinion, issued in response to Mother's initial concise statement and second, amended concise statement, it did not elaborate on the basis for its decision, other than to state that it considered the evidence and testimony and viewed the cellphone video of the incident that A.K. recorded. *See* Trial Court Opinion, 9/9/2020, at 2 (unnumbered pages). In the court's second opinion, issued in response to Mother's third, supplemental concise statement, it explained its decision as follows.

> Th[e trial c]ourt viewed a cell phone video that showed [Mother] cornering the child and pinning him on the couch. [Mother] was screaming at the child in close proximity to his face. When [Mother] attempted to "smack" the child in the mouth, the child attempted to block her from doing so. [Mother] admitted that when she went to smack him in the mouth, the child "ducked it" and then she smacked him in the head. The child was screaming loudly as she attacked him. [Mother] pushed the child's head into a pillow. [Mother] struck the child on the side of his head with her entire hand with her wrist striking the child's ear causing the entire side of the child's head to be "all red" and causing substantial pain for approximately 1-2 hours.

> This was not one single strike or act. There was no rational and thought-out act of punishment. [Mother's] acts could not possibly be construed as any form of discipline. Viewing the video, [Mother's] repeated acts were quite obviously violent and abusive. Thus, th[e trial c]ourt writes to clarify that it viewed [Mother's] cornering of the child, pushing his head into a pillow, pinning him on the couch, attempting to strike him in the mouth, yelling at him in close proximity, and striking his head and ear as repeatedly committing violent acts within the definitions set forth in 23 Pa.C.S.[ §] 6102 (a)(5). These acts or course of conduct caused or put the child in reasonable fear of bodily injury.

Trial Court Opinion, 11/5/2020, at 1-2 (unnumbered pages).

It is apparent from the trial court's opinion that it found A.K.'s cellphone video critically important and persuasive when reaching its decision to enter the final PFA order. However, as explained above, no one marked the video as an exhibit or asked that the court admit it into evidence. There is also no indication in the record that the court admitted it into evidence. It was improper for the court to base its decision on material outside the record, and we cannot affirm the court's order based on that material. ***See M.P. v. M.P.***, 54 A.3d 950, 955 (Pa. Super. 2012) (quoting ***Ney v. Ney***, 917 A.2d 863, 866 (Pa. Super. 2007)) ("A trial court may not consider evidence outside of the record in making its determination. Nor may this court uphold a trial court's order on the basis of off-the-record facts.") (citations and quotation marks omitted).

While the trial court also heard testimony regarding the subject incident, that testimony does not support a number of the court's factual findings. There was no testimony that Mother cornered Z.K. and "pinn[ed]" him to the couch. Trial Court Opinion, 11/5/2020, at 1-2 (unnumbered pages). Also, there was no testimony that Mother was screaming at Z.K. "in close proximity to his face." ***Id.*** at 1 (unnumbered pages). Perhaps the video may have supported these findings, but without it, these findings stand unsupported in the record.

Additionally, the court's finding that "the entire side" of Z.K.'s head was red, and that he suffered "substantial pain" for one to two hours, overstates the evidence. *Id.* at 1-2 (unnumbered pages). Z.K. testified initially that "the entire side of my head that she hit was all red and everything." N.T., 6/10/2020, at 33. Nonetheless, when asked soon thereafter where "the red mark" on his head was, Z.K. apparently clarified his testimony and explained that the mark was "[o]n my ear, like on the actual ear." *Id.* at 34. He did not testify that the mark was particularly painful but indicated simply that "[i]t hurt whenever I touched it for a while…. Like an hour and to [*sic*] two [] hoursish[.]" *Id.* at 44.

Given that the trial court entered the final PFA order based on material not in evidence, and the remaining evidence does not support a number of the court's findings, we are constrained to conclude that the court abused its discretion. To affirm the order, this Court would need to take on the role of a factfinder, assess the weight and credibility of the testimony on the trial court's behalf, and craft our own justifications for its decision. This is clearly beyond our purview as an appellate court. *See In re A.J.R.-H.*, 188 A.3d 1157, 1178 (Pa. 2018) (concluding that the harmless error and right for any reason doctrines did not apply, where the orphans' court admitted exhibits erroneously, and where, "in order to affirm its decision on another basis … we would have to engage in fact finding, weigh the competent … testimony presented, and make our own credibility determinations[,]" which would be

"far afield of our appellate court function[.]").[6] We must therefore reverse the June 18, 2020 order.

Order reversed.

Judge Murray joins the memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2021

---

[6] In light of our conclusion that Mother's first claim entitles her to relief, we do not address her second claim.