J-A28032-21, J-A28033-21, J-A28034-21, J-A28035-21, J-A28036-21, J-A28037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROSIE THATCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEBORAH HACK | : | No. 1401 MDA 2020 |

Appeal from the Order Entered October 29, 2020
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2020-01245

| | | |
|---|---|---|
| ROSIE THATCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GARY HACK | : | No. 1402 MDA 2020 |

Appeal from the Order Entered October 29, 2020
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2020-01246

| | | |
|---|---|---|
| ROSIE THATCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GREGORY HACK | : | No. 1403 MDA 2020 |

Appeal from the Order Entered October 29, 2020
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2020-01247

| | | |
|---|---|---|
| ROSIE THATCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

J-A28032-21, J-A28033-21, J-A28034-21, J-A28035-21, J-A28036-21, J-A28037-21

|  |  |  |
|---|---|---|
| | Appellant | : |
| | | : |
| | | : |
| | | : |
| | v. | : |
| | | : |
| | | : |
| | | : |
| CHAD HACK | | : No. 1404 MDA 2020 |

Appeal from the Order Entered October 29, 2020
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2020-01248

|  |  |  |
|---|---|---|
| ROSIE THATCHER | | : IN THE SUPERIOR COURT OF |
| | | : PENNSYLVANIA |
| | Appellant | : |
| | | : |
| | | : |
| | v. | : |
| | | : |
| | | : |
| | | : |
| ABBY HACK | | : No. 1405 MDA 2020 |

Appeal from the Order Entered October 29, 2020
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2020-1249

|  |  |  |
|---|---|---|
| ROSIE THATCHER | | : IN THE SUPERIOR COURT OF |
| | | : PENNSYLVANIA |
| | Appellant | : |
| | | : |
| | | : |
| | v. | : |
| | | : |
| | | : |
| | | : |
| RYAN HACK | | : No. 1406 MDA 2020 |

Appeal from the Order Entered October 29, 2020
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2020-01250

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

---

[*] Former Justice specially assigned to the Superior Court.

J-A28032-21, J-A28033-21, J-A28034-21, J-A28035-21, J-A28036-21, J-A28037-21

MEMORANDUM BY STEVENS, P.J.E.:             **FILED DECEMBER 27, 2021**

Appellant Rosie Thatcher (hereinafter "Mother") appeals from the order of the Huntingdon County Court of Common Pleas denying her six petitions for Protection From Abuse (PFA) orders against her family members, Appellees Deborah Hack, Gary Hack, Gregory Hack, Chad Hack, Abby Hack, and Ryan Hack. Mother argues that the trial court abused its discretion in concluding that she failed to show Appellees' behavior constituted "abuse" as defined in the PFA Act (23 Pa.C.S.A. § 6102). We affirm.

On October 19, 2020, Mother filed PFA petitions on behalf of her herself and her husband, John Thatcher, Sr. ("Father"), against her daughter, Deborah Hack; Deborah's husband, Gary Hack; Deborah and Gary's sons, Gregory Hack and Chad Hack; Chad's wife, Abby Hack; and Chad and Abby's fifteen-year-old son, Ryan Hack.[1] On the same day, the learned trial court held a hearing with Mother's counsel and Mother, who appeared *via* telephone. The trial court entered temporary PFA orders until a full hearing could be held.

On October 28, 2020, the trial court held an evidentiary hearing at which Mother testified as well as a majority of Appellees, except for Ryan Hack, who is a minor.[2] Thereafter, the trial court made the following factual findings:

---

[1] In her petition, Mother indicated that she was eighty-five years old and that Father was ninety-one years old.

[2] Father did not appear at the hearing. Counsel for Appellees argued at the beginning of the hearing that Mother could not file a petition for a PFA order on behalf of Father, but rather, Father was required to file his own petition

*(Footnote Continued Next Page)*

- 3 -

1. In 2014, Mother and Father deeded their house, located at 760 King Street in the Borough of Petersburg, Huntingdon County, Pennsylvania, to Deborah.[3]  N.T., Protection From Abuse Hearing, Oct. 28, 2020 (the "PFA Hearing"), at 55.  Testimony as to the reasons for the transfer is scant, but Deborah testified that she believed Father and Mother wanted the house to be in her name, and that there was some fear that otherwise Mother and Father would lose their home.  N.T. PFA Hearing, at 58-59, 73.  Mother made a vague reference to a possible life tenancy in the property for her and Father, but no evidence was presented establishing one.[4]

2. Conflict began about a year later, in 2015.  Mother has five Chihuahuas that either have acted aggressively toward other people, or have bitten them (this was disputed by Mother).  The insurance company providing homeowners' coverage for the property apparently threatened to stop coverage if the dogs were not removed.  Presumably discussion occurred between the parties leading up to this point, but Deborah and Gary wound up engaging an attorney, who sent a demand letter to Mother seeking removal of the dogs.  Mother took this as a threat to kick her and Father out of the house.  There was also testimony that the dogs are damaging the house.  *Id*. at 13-16, 34-35, 64, 78.

3. Deborah's sister, Wendy Thatcher, is often present at the house.  Wendy ostensibly is there to serve as a caregiver for Mother and Father.  Deborah alleges that Wendy's presence goes beyond caregiving, and that Wendy lives there full time.  Deborah has been seeking to exclude Wendy from the house for some time, starting with demand letters sent to her through

---

seeking a PFA order for himself as an adult.  Notes of Testimony (N.T.), 10/28/20, at 3.  The trial court did not specifically rule on this objection, but deferred consideration of this issue until the end of the hearing.  Ultimately, the trial court denied the petitions based on its finding that there was insufficient evidence to warrant the entry of the PFA order.

[3] Deborah testified that Mother and Father deeded their home to her in 2014 in exchange for a dollar.  *Id*. at 55.

[4] Mother testified that "[t]here's supposed to be a thing made up when we moved in.  We lived there tenancy our lifetime live at that house, you know." *Id*. at 49.  However, there is no evidence of record to support Mother's contention that she had a life estate interest in the property.  Instead, Mother agreed that Deborah owned the property.

counsel, and now via a separate ejectment action, CP-31-CV-1694-2019. Wendy is represented in the ejectment action by the same counsel as Mother for this action, Attorney Sawicki. At the PFA Hearing, Attorney Sawicki sought to use this conflict between Deborah and Wendy as evidence of abuse. She emphasized Mother's health problems and characterized the ejectment action as an attempt by Deborah to deny Mother a necessary caregiver. N.T., PFA Hearing, at 59-64.

4. Aside from the ejectment action, there appears to have been a long-running conflict between Wendy and Deborah, with Mother aligning with Wendy, and the remaining defendants aligning with Deborah. Separate from the instant action, Mother and Wendy have sought to exclude [Appellees] from the house and the surrounding property entirely. *See*, *e.g.*, *id*. at 80, 99-100. Father's position in regard to the dispute is unknown, but it appears that [Appellees] have sought to keep some degree of contract with him, and he presumably desires this. *Id*. at 68 (Deborah's testimony that she was last inside the house over a year ago to give Father a gift); 76 (Deborah's testimony that she cannot see Father, because Wendy and Mother do not allow her into the house), and 85 (Gregory's testimony that he was at the house in March of 2020 to take Father for a two-hour ride with Gregory's children, Father's great grandchildren).

5. Deborah has some concerns with conditions in the house for her parents, and particularly for her father. *Id*. at 64 (Deborah's testimony that she has previously taken pictures inside the house of damage caused by the dogs, and of Father); 80 (Deborah's testimony that she contacted the Area Agency on Aging to report her concerns regarding Mother and Father). Deborah is aware of Mother having health problems, though not the full extent of them, due to the lack of communication from Mother and Wendy. Deborah has helped Mother attend medical appointments when Wendy was not able to. *Id*. at 63, 66.

6. Mother's testimony is that she is under constant harassment from [Appellees]. She alleged that they come up to the house and enter whenever they like without warning, that they constantly poke around in the outbuildings, that Deborah routinely enters and takes pictures of the house, and that Deborah has threatened many times to sell the house out from under her and Father and basically kick them out into the

street. Most significantly in regard to abuse, she testified that one time when Deborah and Gregory were at the property to wash the porch and front of the house, Gregory entered the house to fill a bucket of water, and instead of waiting until Mother and Wendy had secured the dogs, he pushed his way into the house and kicked one of the dogs across the kitchen floor. *Id*. at 22-23, 25-26.

7. Mother had a high degree of difficulty remembering the level of detail regarding the alleged incidents that was included in the petitions, particularly with dates and timeframes. She often looked to Attorney Sawicki for assistance in testifying. Each time Attorney Sawicki attempted to fill in the details for her, typically from the contents of the letters that had been exchanged between the parties' respective counsel over the years (completely ignoring the fact that such allegations are inadmissible hearsay). *See*, *e.g.*, *id*. at 16-20, 22-24, 50-51.

8. Mother appears to have a degree of paranoia regarding people being at or around the house. Many of the [Appellees] testified that on those occasions when Mother or Father had come out on the front porch to see them, at least three different locks needed to be opened. When Mother testified that Gary had been at the house one evening to go into one of the outbuildings, she said she had been alerted to his presence by the dogs barking, and expressed an irrational level of fear associated with the dogs' barking possibly being caused by someone's presence outside the house. *Id*. at 29.

9. [Appellees] moving the lawn is a particularly stressful matter for Mother. She made much of the [Appellees] showing up "without warning" to mow, and the fact that some of her attorneys' letters to [Appellees] had demanded twenty-four hours' notice before they came to the house for any reason. Mother seemed to believe this was an absolute requirement, whereas Deborah's testimony was that there was no such agreement in place. *Id*. at 8-9, 37-39, 66, 69-70.

10. There was at least anecdotal evidence that Wendy provided much of the information relied on by Attorney Sawicki in preparing the petitions, though Wendy neither sought PFAs for her own benefit nor testified at the PFA hearing. *Id*. at 31 (Attorney Sawicki attempting to question Mother about changes to the petitions suggested to Attorney Sawicki by Wendy).

Trial Court Opinion, 12/28/20, at 3-6 (footnotes omitted).

On October 29, 2020, the trial court entered orders denying Mother's six petitions and vacating the temporary PFA orders. Mother filed a timely notice of appeal at each of the six docket numbers and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[5]

Mother raises the following issues for review on appeal:

A. What evidence is required to establish abuse under 23 Pa.C.S. § 6102(5): "Knowingly engaging in a course of conduct or repeatedly committing acts toward another person … which place the person in reasonable fear of bodily injury"? Is it reasonable for an 85-year-old woman to fear bodily injury through exposure to COVID-19 and through aggravation of her hypertension, anxiety, and insomnia by threats to intrude into her home at will, by actual intrusions, at all hours without warning, and by demonstrations of violence against her pets and care-giver?

B. Is an attorney's letter admissible as evidence to show that a person who received the letter was aware of its contents and to confirm the date before which an event occurred? Are attorney letters excluded *per se*, either by the relevance rules, Pa.R.E. 401-403, or by the hearsay rules, Pa.R.E. 801-803?

Mother's Brief, at 2.

---

[5] Mother filed six separate, identical notices of appeal, bearing all six trial captions, with one caption corresponding to each docket at which the appeal was filed. *See **Commonwealth v. Johnson***, 236 A.3d 1141, 1148 (Pa.Super. 2020) (approving the use of separate but identical notices of appeal as compliant with the dictates of ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018)). While the six cases were listed consecutively in this Court, Appellant filed an identical brief in each of the six cases. As such, for the sake of judicial efficiency, we have resolved the six appeals in this decision.

In reviewing the trial court's denial of Mother's petitions for PFA orders, our standard of review is well-settled:

> In a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion. ***Custer v. Cochran***, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." ***Mescanti v. Mescanti***, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted). Moreover, on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005). It is well-settled that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted). Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. ***Snyder v. Snyder***, 427 Pa.Super. 494, 629 A.2d 977, 982 (1993).

***Kaur v. Singh***, 259 A.3d 505, 509 (Pa.Super. 2021).

In her first claim, Mother asserts that the trial court abused its discretion in determining that she was not entitled to a PFA order for herself and Father and finding there was insufficient evidence that Appellees' conduct constituted "abuse" as defined within the PFA Act.

This Court has held that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Mescanti***, 956 A.2d at 1022–23. The PFA Act defines "abuse" as follows:

**§ 6102. Definitions**

> **(a) General rule**.—The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:
>
> "**Abuse**." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> > (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
> >
> > (2) Placing another in reasonable fear of imminent serious bodily injury.
> >
> > (3) The infliction of false imprisonment pursuant to 18 Pa.C.S.A. § 2903 (relating to false imprisonment).
> >
> > (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
> >
> > (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a).

Mother argues that the trial court misunderstood the definition of "abuse" as she contends that Appellees knowingly engaged in a course of abusive conduct in which they entered upon her house, porch, and grounds of her residence when they were not expected or invited. Mother also claimed that Appellee Deborah made repeated threats to evict her from the residence.

Mother claims Appellees' conduct constituted abuse under Section 6102(a)(5) as Appellees' intrusions made her anxious, brought on insomnia, and aggravated her hypertension. Further, Mother asserted Appellees' conduct caused her to "reasonably fear that she and her husband would contract COVID-19 because some defendants approached them uninvited without masks while supposedly in quarantine." Mother's Brief, at 8.

Mother acknowledges the trial court expressly found Mother's testimony was "not credible, particularly in regard to her characterizations of what occurred or to the degree of stress and fear she experienced as a result of it." Mother's Brief, at 31 (citing T.C.O., at 6). Nevertheless, Mother asks this Court to reject the trial court's credibility findings as she claims the trial court's findings are not supported by competent evidence. Mother's Brief, at 31 (citing **Coda v. Coda**, 666 A.2d 741, 743 (Pa.Super. 1995) (stating that "[i]t is for the trial court to assess the credibility of the witnesses, and, if its findings are supported by competent evidence, a reviewing court is bound thereby")).

Mother additionally argues that, in reviewing her challenge to the sufficiency of the evidence, this Court is required to review the evidence in the light most favorable to her as the petitioner and grant her the benefit of all reasonable inferences. Mother's Brief at 9-10 (quoting **S.W. v. S.F.**, 196 A.3d 224, 228 (Pa.Super. 2018). However, Mother cites to case law in which this Court reviewed trial courts' decisions to *grant* petitions for PFA orders. As noted above, we are required to "review the evidence of record in the light most favorable to, and grant all reasonable inferences to, *the party that*

*prevailed before the PFA court*." **Kaur**, **supra** (emphasis added). As the lower court denied Mother's petitions for PFA orders, this Court must review the evidence in the light most favorable to Appellees.

While Mother's counsel never specifically quoted the statutory definition of "abuse" within the PFA Act in the lower court, the trial court determined Mother was seeking to prove that she had been subjected to abuse under Section 6102(a)(5), which prohibits an individual from "[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S.A. § 6102(a).

The trial court set forth its rationale to support its credibility findings as follows:

> Mother's characterization of [Appellees'] actions and her fear resulting from them simply was not credible. More than that, Mother's fear in relation to the alleged actions simply is not reasonable. There were no allegations that [Appellees] sought to prevent Mother or Father from leaving the house, or from contacting authorities or persons outside the family. There were no allegations of physical menacing or threats made, or any actual physical abuse. In fact, the only physical contact alleged was that Gregory had "pushed past" Wendy when he entered the house to fill a bucket of water. While the allegations of a dog being kicked during this incident is troubling, Mother's characterization of the event was significantly exaggerated, and she could not remember details about it that should have been clear to her (even in light of her advanced age and health issues). Her testimony on this point came across as influenced by the characterizations and remembrances of others. Further, given the allegations regarding the aggressive and uncontrolled behavior of the dogs, it is just as likely that Gregory used his food to sweep the dog out of his way

- 11 -

and keep it from biting him – a reasonable action under the circumstances and one not likely to injure the dog if done properly.

Turning to the allegations that [Appellees] have been entering the house without permission and without warning, Mother's incredible testimony was directly rebutted by [Appellees'] credible testimony, which reflected no such pattern of behavior. Pointedly, each [Appellee's] testimony was that they had not been inside the house for at least a year, and had barely even interacted with Mother or Father during that time, seeking to respect Mother's wishes. Regardless, as Deborah is the owner of the property, she and her agents (i.e, the other [Appellees], acting with her permission) have the authority to enter the house.

Likewise, the fact that Deborah and her agents have the authority (and, in fact, responsibility) to maintain the property negates a finding of abuse based on the lawn mowing and occasional access to the outbuildings. There was no testimony that [Appellees] mowed the grass at times or in a manner calculated to harass, annoy, or instill fear in Mother. Mother's insistence that they provide twenty-four hours' notice before mowing is, absent any written agreement otherwise, unreasonable. Deborah and Gary's testimony is that mowing is dependent on their work schedules and the work schedules of the other [Appellees], who often help with this task. The very nature of such property maintenance is weather-dependent, meaning that there are often times that an extended notice requirement would cause [Appellees] to miss a window of clear weather.

\*\*\*

Instead of seeking information regarding what actions by [Appellees] put Mother in reasonable fear of bodily injury, Mother's counsel focused on actions by [Appellees] that Mother was "complaining about" or "does not like."

\*\*\*

The petitions filed by Mother alleged a concerning pattern of behavior on the part of [Appellees]. One that, if proven by a preponderance of the evidence, would likely rise to the level of "abuse" necessary to support PFAs against them. However, what emerged at the PFA hearing was instead a picture of an emotionally hurtful and tense family situation. [Appellees] have attempted to respect Mother's wishes for limited to no contact with them as much as reasonably possible, while still maintaining the house and property, keeping some degree of contact with Father,

- 12 -

> and seeking to make sure that Mother and Father are appropriately taken care of. They have done all of this while in the midst of an ongoing dispute with Wendy, who may be trying to force them out entirely. In the appropriate causes of action, the rights of the various parties to the house and property are certainly within the jurisdiction of this Court to decide, as is whether any action is necessary on the part of the Area Agency on Aging to ensure the interests of Mother and Father are properly protected and looked after. However, a protection from abuse petition supported by only the scantiest of evidence is not the appropriate action in which to address those matters.

T.C.O. at 7-9.

In arguing that the trial court's credibility findings are not supported by the evidence of record, Mother does not challenge the trial court's finding that Deborah has the authority to access Mother's residence as it is undisputed that Deborah is the lawful owner of the home and the surrounding property. Mother does not dispute the trial court's finding that Deborah, as the lawful owner of the property, has the responsibility to maintain the property.

Instead, Mother challenges the trial court's decision to find Appellees testified credibly in claiming they access the property at reasonable times to mow the lawn when their schedules permit, respect Mother's decision not to have contact with them, and have not been inside the home for nearly a year.

We reject Mother's attempt to have this Court substitute our judgment for the credibility findings of the lower court. As noted above, this Court defers to the lower court's credibility determinations with respect to the witnesses that testify at the PFA hearing as we acknowledge that the "credibility of witnesses and the weight to be accorded to their testimony is within the

exclusive province of the trial court as the fact finder." ***Kaur***, ***supra***; ***C.H.L.
v. W.D.L.***, 214 A.3d 1272, 1276–77 (Pa.Super. 2019).

Mother also disputes the trial court's finding that her fear resulting from Appellees' activities was unreasonable. As noted above, Mother testified that it raises her blood pressure when Appellees come to her house when Mother did not desire them to be there. N.T. at 50. She also highlights her testimony to a specific incident in which she alleged that Gary kicked one of her dogs while entering the home to fill a bucket of water.

However, there is record support for the trial court's finding that Mother's stated fear in relation to Appellees' activities was unreasonable. The trial court found Mother exhibited paranoia in becoming extremely upset when Appellees accessed the property to mow the lawn and allegedly caused her dogs to bark upon their arrival.

As noted *supra*, the trial court found that Appellees accessed the property to maintain it as Deborah had the obligation to do so as the record owner of the property and Mother and Father were unable to do so. There is no evidence Appellees accessed the property at inappropriate hours or times to annoy Mother and Father or to cause them any distress or harm.

With respect to the incident in which Mother alleges Gary kicked one of her dogs, she indicated that she was "upset" by Gary's action but did not claim that Gary's conduct caused her any injury or fear of bodily injury. N.T. at 51. Moreover, as Mother admitted that her dogs needed to be restrained because they were hostile to visitors who entered her residence, there is support for

the trial court's finding that Gary may have used his foot to move the dog aside in order to access the residence.

For these reasons, we find that the trial court did not err in determining that Mother failed to meet her burden to prove she suffered "abuse" within the meaning of Section 6102 at the hands of Appellees.

In her second claim, Mother asks this Court the following question: "[i]s an attorney's letter admissible as evidence to show that a person who received the letter was aware of its contents and to confirm the date before which an event occurred?" Mother's Brief, at 3.

Our standard of review of evidentiary rulings is as follows:

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Talley***, 236 A.3d 42, 55 (Pa.Super. 2020) (citation omitted).

In reviewing Mother's claim, we observe that Mother offered several letters from the parties' previous counsel as exhibits at the PFA hearing. However, the trial court did admit these exhibits, not for the truth of the

- 15 -

assertions within the letters, but rather for the purpose of showing that the witnesses were aware of the letters and the contents therein.

To the extent that Mother suggests that her counsel should have been permitted to use the letters to refresh her memory as to certain details contained within the letters, Mother fails to cite to any relevant authority or develop any analysis to support this assertion. As such, this claim is waived. ***Commonwealth v. Antidormi***, 84 A.3d 736 (Pa.Super. 2014) ("[a]s Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development").

For the foregoing reasons, we affirm the trial court's decision to deny each of Mother's petitions for PFA orders.[6]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2021

---

[6] We note that Appellees sought consolidation of the within cases but this Court denied the motion for consolidation in the event that there were factual differences. Finding none, we affirm the well-reasoned decision of President Judge George Zanic on all six cases in this decision.