J-S32014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBRA BARTHOLD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES ZVONEK | : | |
| | : | |
| Appellant | : | No. 397 MDA 2022 |

Appeal from the Order Entered January 31, 2022
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2017-41602

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.:     **FILED: DECEMBER 2, 2022**

Charles Zvonek appeals the Lackawanna County Court of Common Pleas' order granting the petition for protection from abuse ("PFA") filed by Debra Barthold. Zvonek and Barthold co-own a residence ("the residence"), which Zvonek no longer lives in but Barthold continues to live in with her husband. Barthold filed the PFA petition after Zvonek was making unannounced entries into the residence. On appeal, Zvonek argues the trial court erred by granting the petition because he had proper authority to be in the residence as a co-owner. He also argues the trial court's failure to view the videos he recorded with the GoPro camera he wore when making the unannounced entries violated his due process rights. As we conclude these issues are meritless, we affirm.

Barthold filed the PFA petition against Zvonek on January 18, 2022. In the petition, Barthold alleged that on multiple occasions, Zvonek entered the residence without announcing himself while wearing a GoPro camera. She maintained Zvonek had entered her bedroom, taken videos of her and her husband, and engaged in pushing and shoving and other threatening and intimidating behavior. In the petition, Barthold asked the court to, among other things, prohibit Zvonek from having any contact with her and exclude Zvonek from the residence. The trial court entered a temporary PFA order granting that relief, and scheduled a hearing on the petition for January 31, 2022.

At the hearing, Zvonek appeared without counsel. Barthold testified first. She reported that she and Zvonek had been in an intimate relationship over twenty years ago, that they co-own the residence, but that she currently lives in the residence with her husband. Zvonek lives across the street from the residence. Barthold maintained that after a prior PFA order expired in July 2021, Zvonek began coming into the residence unannounced with a GoPro camera attached to his chest. She recounted: "No Phone call. We'd be eating dinner, coming out of the shower, getting off the toilet, and there's [Zvonek]." N.T., 1/31/22, at 4. She said he came into her residence multiple times a week and at all hours of the night. *See id.* at 6.

Barthold maintained that Zvonek went into her bedroom, and then went into her closet and her husband's closet. She testified she would ask Zvonek

- 2 -

to leave and to not go into her bedroom, but he ignored those requests. According to Barthold, Zvonek "gets aggressive" and "gets nasty" *Id.* at 5. He screams at her husband to move out and on one occasion, "[Zvonek] threw his body toward [her husband's] shoulder." *Id.* She testified that she "absolutely" feels threatened when Zvonek comes into the residence, she is scared about what could happen, and that she believes this threatening behavior would only continue if the PFA were not granted. *Id.* at 7-8. Zvonek chose not to cross-examine Barthold.

Zvonek did testify on his own behalf, though. He admitted he went into the residence when Barthold was home, but that he did so to get his personal property that he stored there. He stated he wanted to move back into the residence, which he co-owns with Barthold. *See id.* at 16, 17. He maintained that, as a co-owner, he has every right to enter the residence. *See id.* at 12, 16.

Zvonek also admitted he wears a GoPro camera when he walks into the residence. *See id.* at 12-13. He asked the court if it viewed the videos he had submitted from the camera. The court stated it had not, and was subsequently told by court personnel that the videos had been dropped off the preceding Friday, and were not able to make it into the file by the Monday morning hearing. *See id.* at 11. The court allowed Zvonek to testify about the content of the videos. *See id.* at 14-16. The court then stated: "I will take as true

whatever you said that would have been offered in that video evidence, but it doesn't change my opinion that a PFA should be granted." ***Id.*** at 18.

The court was clearly perplexed as to why Barthold and Zvonek still co-owned the residence, ***see id.*** at 17-18, and it remarked that "this is truly the craziest circumstances that I've ever heard," *id.* at 18.[1] The court concluded it was going to grant the PFA petition because "it's a recipe for disaster to let [Zvonek] come and go as [he] please[s] in that house." ***Id.*** at 19.

The court entered a PFA order on the same date as the hearing. The order directed, *inter alia*, that Zvonek be excluded from the residence and have no contact with Barthold. The court gave the order an expiration date of one year from its entry, or January 31, 2023. Zvonek, now represented by counsel, filed a timely notice of appeal. He complied with the court's order to file a Pa.R.A.P. 1925(b) statement, and the trial court issued a Pa.R.A.P. 1925(a) opinion in response. Zvonek raises two issues for our review:

I.  Whether the Honorable Trial Court erred as a matter of law and abused its discretion in granting the January 31, 2022 permanent Protection from Abuse order because the evidence of record does not support the conclusion that Appellant abused Appellee within the meaning of 23 Pa. C.S.A. § 6102, *i.e.*, engaged in any act or course of conduct without authority that would place the Appellee in reasonable fear of bodily injury; and

II. Whether the Honorable Trial Court erred as a matter of law and abused its discretion in reaching its determination without reviewing video evidence offered by Appellant, who

---

[1] Apparently, Barthold's husband is the former husband of Zvonek's girlfriend and Zvonek wishes to evict the husband from the residence.

> was not represented by counsel, thereby denying Appellant his due process right to be heard in violation forte Constitution of the Commonwealth of Pennsylvania and the Fourteenth Amendment of the Constitution of the United States.

Appellant's Brief at 4.

When an appellant challenges the granting of a PFA petition, as Zvonek does here, we review the trial court's legal conclusions to see whether the trial court committed an error of law or abused its discretion. *See K.B. v. Tinsley,* 208 A.3d 123, 127 (Pa. Super. 2019). We defer to the credibility determinations of the trial court as to witnesses who appeared before it. *See id.* at 128.

Zvonek asserts in his first issue that there was insufficient evidence to support the granting of a PFA order against him. In determining whether sufficient evidence existed to support the PFA order, we must review the evidence in the light most favorable to Barthold and grant her the benefit of all reasonable inferences. *See id.* Through this lens, we must ascertain "whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." *Id.* (citation omitted) This standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly. *See id.*

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal being the

prevention of abuse. **See id.** at 127. The PFA Act defines "abuse," in relevant part, as:

> Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a)(5).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. The intent of the alleged abuser is of no moment." **K.B.**, 208 A.3d at 128 (citations omitted). Given the PFA Act's goal of preventing abuse, a victim does not have to wait for physical or sexual abuse to occur for the Act to apply. **See id.**

In rejecting Zvonek's sufficiency claim, the trial court began its analysis by stating that it had found Barthold's testimony at the hearing to be credible. This testimony included her statements that Zvonek enters the residence several times a week unannounced and with a GoPro camera, ignores her requests to leave, and gets aggressive during those entries. The trial court continued:

> This Court found [Barthold's] testimony credible that she is fearful of [Zvonek] and not sure what he will do next. Additionally, [Zvonek] testified he entered the residence on multiple occasions while [Barthold] was in the residence and believes he cannot be denied entrance into the property. [Zvonek's] insistent testimony and behavior [that] he may enter [Barthold's] residence as he so chooses has created fear [in] [Barthold] to which this court has found to be a "recipe for disaster." Furthermore, there were no further allegations [Zvonek] appeared at [the] residence following the entrance of the Temporary PFA. Therefore, this Court did not err or abuse its discretion when it made its final ruling.

Trial Court Opinion, 4/29/22, at 5.

We agree. Zvonek argues, however, that the court erred in reaching this conclusion because he did not commit any act which put Barthold in reasonable fear of bodily harm. He maintains, in essence, that because he testified that he only wears the GoPro camera for his own protection, that he is only entering the residence to retrieve the belongings he keeps in the residence as the lawful co-owner, and because Barthold never testified that he was physically aggressive towards her, there was not sufficient evidence to establish that Barthold's fear of bodily injury was reasonable. This claim is without merit.

In the first instance, the purpose of, and intent behind, Zvonek's unannounced entries is not relevant. *See K.B.*, 208 A.3d at 128. Instead, the objective is to determine whether Barthold was put in reasonable fear of bodily injury. *See id.* The trial court, in finding that she was, pointed to Barthold's credited testimony that she "absolutely" felt threatened and scared by Zvonek's aggressive behavior inside the residence. Contrary to Zvonek's assertions, there was no need for the trial court to find that Zvonek committed any kind of physical act against Barthold in order to conclude, by a preponderance of the evidence, that she had been placed in reasonable fear of bodily injury. *See id.* We find no abuse of discretion on the part of the trial court.

Zvonek also maintains there was no abuse here because his entries into the residence were with "proper authority" as the co-owner of the residence. In support, he insists he has "a clear legal right as co-owner to enter the [residence] and did so for purposes of retrieving items of his personal property when he was legally entitled to store there." Appellant's Brief at 11. This claim is also meritless.

Again, Zvonek's purpose and intent behind his actions is not relevant. **See K.B.**, 208 A.3d at 128. Moreover, as the trial court pointed out, the fact that Zvonek may have property disputes or issues as it relates to the residence is a separate and distinct legal matter from whether his actions of repeatedly entering the residence unannounced and with a GoPro camera and then acting in a manner that Barthold found aggressive and threatening is sufficient to support the granting of a PFA order.

Indeed, it would be illogical to find that the mere fact that Zvonek is the co-owner of the residence takes him outside the parameters of the PFA Act and gives him license to act as he pleases with those who reside inside that residence. The PFA Act recognizes, as it must, there will be situations of abuse involving parties who co-own property. It specifically provides that the court may order a PFA defendant to be excluded from a property he co-owns with the petitioner. **See** 23 Pa.C.S.A. § 6108(a)(2); **see also Snyder v. Snyder**, 629 A.2d 977, 984 (Pa. Super. 1993) (stating the PFA Act provides the court with the authority to exclude a defendant from a particular residence and that

the "tenor of the Act is that removal of an abusive spouse from the marital residence is the preferred" remedy under the Act in those situations). Barthold sought this relief here, and the court granted such relief after finding the evidence was sufficient to enter a PFA order against Zvonek. We agree with the trial court that the evidence was sufficient to enter a PFA order by a preponderance of the evidence. No relief is due.

In his second claim, Zvonek complains the trial court's failure to view the video footage from the GoPro camera violated his due process rights. This claim also fails.

Zvonek recognizes this Court has held that, in order for a PFA hearing to comport with due process, "the parties must, at a minimum, have the opportunity to present witnesses, testify on one's behalf, and cross-examine the opposing party and his/her witnesses." Appellant's Brief at 18, *quoting* ***Lanza v. Simconis***, 914 A.2d 902, 906 (Pa. Super. 2006). Zvonek does not allege he did not have the opportunity to present witnesses or cross-examine Barthold, and Zvonek did testify on his own behalf.[2]

Despite the fact that his hearing met these due process requirements, Zvonek argues his due process rights were nonetheless violated because the

---

[2] Zvonek does make a passing reference to the fact that he proceeded *pro se* at the PFA hearing. However, he does not assert he was not notified of his right to be represented by counsel at the hearing. Still, the trial court pointed out in its opinion that it had given such notice to Zvonek. **See** Trial Court Opinion, 4/29/2022, at 5.

trial court did not view the footage from the GoPro camera, which Zvonek maintains contains exculpatory evidence. In rejecting this claim, the trial court noted it had allowed Zvonek to testify as to the contents of the submitted videos. It also specifically stated that it took that testimony as true in rendering its decision. Given these circumstances, we fail to see how the trial court erred in finding Zvonek's due process rights were not violated at the PFA hearing. ***Accord K.B.***, 208 A.3d at 130 (holding the defendant did not suffer any prejudice and was not entitled to any relief on the basis of his claim that the trial court erred by not viewing a note at a PFA hearing, when the defendant was allowed to testify about the contents of the note).

In the end, the trial court concluded that, notwithstanding the credited content of the videos, the PFA order was warranted based on the credible testimony of Barthold. Again, we see no error or abuse of discretion in this conclusion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2022

- 10 -